STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION v.
GLENN RAY T/A LEICESTER BUS LINE.

(Filed 6 January, 1953.)

**1. Utilities Commission § 5—**

Review of order of the Utilities Commission is limited to the record as certified and to the questions of law therein presented, and the Superior Court is without authority to make additional findings for the purpose of determining the validity of the order. G.S. 62-26.10.

**2. Utilities Commission § 3: Carriers § 5—**

An application of a carrier for modification of its franchise to provide "open door" operations between two points, also served by another carrier over a different route, is to be determined by the Utilities Commission upon the basis of the public convenience and necessity, and it is not necessary that the other carrier be given opportunity to remedy any inadequacy in its service. "Route" and "territory" are not synonymous.

**3. Same—**

The burden is upon the applicant for a modification of its franchise to support the application by competent, material, and substantial evidence. G.S. 62-18.

**4. Administrative Law § 3—**

The courts will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law.

**5. Carriers § 5: Constitutional Law § 20a—**

The denial of a carrier's application for modification of its franchise cannot amount to a confiscation of its property, since an applicant has no property rights in an ungranted franchise.

**6. Utilities Commission § 5—**

A determination by the Utilities Commission is not only *prima facie* valid, but is also *prima facie* just and reasonable.

**7. Utilities Commission § 3: Carriers § 5—**

Upon the hearing of an application for modification of a franchise to permit "open door" operations between two points also served by another carrier along a different route, the finding of the Commission that the public convenience and necessity did not require the removal of the "closed door" restrictions amounts in effect to a finding that the applicant had failed to carry the required burden of proof upon the question of public convenience and necessity.

**8. Same—**

Evidence that modification of a franchise would serve the convenience of at least six citizens who make frequent trips between the points in question *held* insufficient to show that the order of the Utilities Commission denying the application was arbitrary or capricious or rebut the presumption that the order is just and reasonable, since the bases of the Com-

mission's decision are the imponderables of substantial public need, whether such need is being reasonably met by existing service, and whether granting the application would endanger or impair the operations of existing carriers contrary to public interest.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by the State of North Carolina *ex rel.* Utilities Commission and the protestant Smoky Mountain Stages, Inc., from *Bennett, Special Judge,* December Term, 1951, of BUNCOMBE.

This is an appeal from a judgment of the Superior Court reversing an order of the North Carolina Utilities Commission entered 23 April, 1951.

This matter was heard by his Honor at the December Term, 1951, of the Superior Court of Buncombe County, and it was agreed by the parties that decision might be rendered after the expiration of the term and that judgment might be signed in or out of the District. The judgment was signed and filed 23 February, 1952.

The Smoky Mountain Stages, Inc., the protesting intervener before the Utilities Commission, had for many years held a franchise west of Asheville, N. C., authorizing it to serve Canton, Waynesville and points beyond on U. S. Highway 19 and 23. In 1946, which was long after the granting of the franchise to Smoky Mountain Stages, Inc., the appellee (hereinafter referred to as applicant) was, by consent (protest by the intervener herein having been withdrawn), granted a franchise to serve the "New Found" area of Buncombe and Haywood Counties, which franchise permitted applicant to operate between Asheville and Canton, partially over the main highway and partially over the New Found Road which leaves the main highway at a point some distance west of the city limits of Asheville and enters the City of Canton by a different but parallel street to the main highway. This franchise expressly limited the applicant to "closed doors" on the main highway and essentially limited his operations to passengers traveling from the New Found section to Asheville and Canton and from Asheville and Canton to the New Found section.

The applicant and the protestant operate over U. S. Highway 19 and 23 for a short distance west of Asheville. However, the applicant's route for the most part is over a secondary road some four or five miles greater in length than the distance between Canton and Asheville over U. S. Highway 19 and 23.

It appears from the evidence that the applicant operates a daily schedule, except Sundays, between Canton and Asheville, as follows: A bus leaves Canton for Asheville at 7:00 a.m. and on each odd hour thereafter up to and including 5:00 p.m., and a bus leaves Asheville for Canton at

8 :00 a.m. and on each even hour until and including 6 :00 p.m.   The applicant's buses are carrying an average of 15 passengers per trip, which is about 50 per cent of capacity.

The protestant, including through and local buses, operates 25 schedules to and 25 schedules from Canton daily, a total of 50 schedules a day between Asheville and Canton.   And according to the testimony of Charles W. Morgan, secretary and treasurer of the protesting company, his company has never received any written or oral request from any of the residents of Canton or Asheville for additional service of any kind between these two points; that the bus business has decreased from 20 to 30 per cent in Western North Carolina within the last two years.

In support of the contention of the applicant that public convenience and necessity required the removal of the restrictions now contained in his franchise, he offered six witnesses.   Each of these witnesses testified that they lived in or near North Main Street in Canton, their homes being located a distance of from ½ to 1½ miles from either the bus station or the nearest point where they could board the bus of the Smoky Mountain Stages, Inc., proceeding toward Asheville.   Most of these witnesses are employed in Asheville.   They testified it was inconvenient to them to be required to go to the bus station and catch a bus when applicant's buses ran by or near their homes.   On cross-examination of these witnesses it was revealed that city buses are operating in Canton which could be used for transportation to the bus station, and in the case of some of the witnesses by using a "short-cut" they could board the Smoky Mountain buses at a point considerably nearer their homes than the bus station. It was further revealed that these witnesses had been riding the buses of the applicant since 1946, and have been boarding them in Canton.   They testified that since the Commission notified the applicant on or about 15 January, 1951, to cease transporting passengers from Canton to Asheville, they had been walking to the city limits to board the applicant's bus.

The applicant testified that in his operation it would be a decided convenience and a great benefit to people residing in the North Main Street section of Canton for the restrictions in his franchise to be removed, because it is a long walk for these folks to and from the bus station; that the only controversy is whether the people in this area will be required to go to the bus station or whether he will be permitted to pick them up at or near their front doors; that his tariffs approved by the Commission authorize him to sell a book of tickets for $3.00, which gives the passenger in Canton six round trips to Asheville, and that he sells a trip ticket between Canton and Asheville for $.35, whereas the Smoky Mountain Stages, Inc., is required to charge $.52 between Canton and Asheville.

It further appears from the evidence that the application for the removal of the restrictions in the applicant's franchise was not made until

after it was discovered he was violating the provisions of his franchise by picking up passengers in Canton whose destination was Asheville and was cited to show cause why his franchise should not be revoked. After the citation was issued he agreed with a representative of the Commission to cease carrying passengers in violation of his franchise but immediately thereafter filed an application for the removal of the restrictions which he had been violating.

The Commission found as a fact that public convenience and necessity do not require the removal of the restrictions placed upon the operating rights of the applicant, and entered an order accordingly.

The applicant duly filed exceptions. The exceptions were overruled. He then filed a petition to rehear which was denied, and from this ruling he appealed to the Superior Court. The cause was heard in the Superior Court on the record certified by the Utilities Commission, and the court found as a fact that the order of the Utilities Commission was not supported by competent, material and substantial evidence, and set aside the findings of fact by the Utilities Commission. The court then proceeded to find its own facts and from such findings held that the action of the Utilities Commission was unreasonable, unjust and arbitrary and in effect amounts to a confiscation of the applicant's property; and further found as a fact "that public convenience and necessity requires that petitioner be allowed to pick up passengers and discharge them along his route, within the corporate limits of the Town of Canton." The court concurred in the ruling of the Commission with respect to any modification of the applicant's franchise which prohibits picking up or discharging passengers along his route within the City of Asheville.

Judgment was entered to the effect that the applicant "be permitted to operate with open doors within the corporate limits of the City of Canton, and not operate with open doors within the corporate limits of the City of Asheville," and remanded the cause to the North Carolina Utilities Commission for appropriate orders in accordance with and conforming to the judgment. The State of North Carolina *ex rel.* Utilities Commission, and Smoky Mountain Stages, Inc., the protestant, appeal and assign error.

*Attorney-General McMullan and Assistant Attorney-General Paylor for the Utilities Commission, appellant.*
*Williams & Williams for Smoky Mountain Stages, Inc., protestant.*
*James S. Howell and E. L. Loftin for appellee.*

DENNY, J.　When an appeal to the Superior Court is taken from an order entered by the North Carolina Utilities Commission, the review is limited to the record as certified and to the questions of law presented

therein. G.S. 62-26.10. There is no provision for additional findings of fact by the judge for the purpose of determining the validity of the order entered by the Commission. *Utilities Comm. v. Fox, ante,* 553, 78 S.E. 2d 464.

In the case of *Utililies Comm. v. Queen City Coach Co.,* 233 N.C. 119, 63 S.E. 2d 113, *Barnhill, J.,* clearly pointed out that where a franchise carrier of passengers serves communities over a route other than the one proposed by the applicant, the Commission is not required upon the finding of public convenience and necessity, to afford the protestant, the authorized carrier, the opportunity to remedy the inadequacy. Service between the same points but over different routes does not constitute service over a route already served, within the meaning of our Bus Act. A franchise is not granted to a carrier "to operate in a certain 'territory' but over a designated 'route.' The route or road to be traveled serves the communities, districts, or territory adjacent to it. It follows that 'route' and 'territory' are not synonymous. . . . There is nothing in the statute to prohibit the service of the same points by different carriers over separate routes where it is found by the Commission such duplicate service is in the public interest." *Utilities Comm. v. Carolina Coach Co.,* 224 N.C. 390, 30 S.E. 2d 328.

In the hearing before the Utilities Commission, the burden was on the applicant to offer competent, material and substantial evidence in support of his application for a modification of his existing franchise. G.S. 62-18; *Utilities Comm. v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201. And the finding of the Commission that public convenience and necessity did not require the removal of the restrictions theretofore placed on the applicant's operating rights, was, in effect, a finding that the applicant had failed to carry the required burden of proof. In such cases, the courts will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law. *Pue v. Hood,* 222 N.C. 310, 22 S.E. 2d 896.

The court below was in error in its finding that the failure to grant the extension of the applicant's franchise, as requested, was in effect a confiscation of his property. An applicant has no property rights in an ungranted franchise. *Pue v. Hood, supra.* A franchise is a privilege that may be granted or withheld by the State depending on the facts and circumstances involved. Therefore, the applicant herein is not entitled to operate with open doors in Canton and Asheville, or on that portion of U. S. Highway 19 and 23, over which the protestant herein has a franchise, until he obtains a finding by the Utilities Commission that public convenience and necessity requires the removal of such restrictions which are now included in his present franchise. And whether the evidence

offered by the applicant before the Commission in support of his application, met the requirements of the statute was for the determination of the Commission in its legal discretion. Moreover, a determination by the Commission is made by statute, not simply *prima facie* evidence of its validity, but *prima facie* just and reasonable. G.S. 62-26.10; *Utilities Comm. v. Trucking Co., supra.*

In the last cited case, *Stacy, Chief Justice,* in speaking for the Court, said: "It is to be remembered that what constitutes 'public convenience and necessity' is primarily an administrative question with a number of imponderables to be taken into consideration, *e.g.,* whether there is a substantial public need for the service; whether the existing carriers can reasonably meet this need, and whether it would endanger or impair the operations of existing carriers contrary to the public interest. Precisely for this reason its determination by the Utilities Commission is made not simply *prima facie* evidence of its validity, but *'prima facie* just and reasonable.' It is not the intent of the statute that the public policy of the State should be fixed by a jury. The court's jurisdiction in the premises is neither original nor wholly judicial in character, and so the weight to be given the decision or determination of the Utilities Commission in any given case is made an exception to its usual procedure." *Utilities Comm. v. Carolina Coach Co., supra.*

In reviewing the record before us, two things must be conceded. First, to grant the applicant's request would serve the convenience of at least six citizens of the North Main Street area of Canton who make frequent trips to Asheville. Second, the applicant, in view of the general decline in the bus business, is anxious to obtain the right to pick up passengers in the North Main Street section of Canton and to transport them to Asheville, and to pick up passengers in Asheville and to transport them to Canton. Even so, the Commission in determining what constitutes sufficient proof of "public convenience and necessity" must keep in mind the imponderables to be taken into consideration as pointed out in *Utilities Comm. v. Trucking Co., supra.* The function of the Commission is not to act merely for the convenience of a few individuals, or for the pecuniary benefit of the carriers involved, but primarily for the benefit of the public at large. *Pue v. Hood, supra.*

We find nothing in the record to warrant the conclusion that the Commission in denying the applicant the relief sought, acted arbitrarily or capriciously. In our opinion, the appealing protestant was entitled to an affirmance of the order of the Commission. There is no sufficient evidence on the record to overturn the determination by the Commission or to rebut the presumption that it was just and reasonable. *Utilities Comm. v. Trucking Co., supra; Utilities Comm. v. McLean,* 227 N.C. 679, 44 S.E. 2d 210. Therefore, so much of the judgment entered below as is in

conflict with the order of the Commission is set aside and the cause remanded for judgment in accord with this opinion.

Remanded.

PARKER, J., took no part in the consideration or decision of this case.