STATE OF NORTH CAROLINA Ex Rel. NORTH CAROLINA UTILITIES
COMMISSION v. FLOYD CASEY, JR., ROBERT S. SULLIVAN AND
OTHERS, PROTESTANTS, AS SHOWN IN THE RECORD.

(Filed 11 January, 1957.)

**1. Utilities Commission § 2—**

The Utilities Commission has the jurisdiction and the duty to pass upon
a contract between a power company and a municipality which maintains
its own electric generating and distributing system, under which the city
proposes to purchase the power company's facilities for electric service to
an area annexed by the city.  G.S. 62-27, G.S. 62-29, G.S. 62-96.

**2. Same: Electricity § 4—Public utility may, with the approval of the
Utilities Commission, sell to a municipality facilities for servicing terri-
tory annexed by the municipality.**

A power company and a municipality maintaining its own electric gen-
erating and distributing system contracted for the sale to the city of the
power company's equipment and facilities for furnishing electric service
in an area annexed by the city.  Protestants, residents of the annexed
area, objected on the ground that the municipal electric rates were higher
than those of the power company.  The Utilities Commission approved the
contract and issued its order for the sale upon its finding that the transfer
was in accord with the public convenience and necessity, it being specifi-
cally found that the municipal facilities were adequate and so situated as
to serve properly all residents within the annexed territory.  *Held:* The
public convenience and necessity involved relates to the public and not to
an individual or individuals, and the order of the Commission authorizing
and directing the sale of the facilities upon its findings, supported by evi-
dence, was properly affirmed.

**3. Utilities Commission § 5—**

By provision of statute, an order of the Utilities Commission is *prima
facie* just and reasonable.  G.S. 62-26.10.

JOHNSON, J., not sitting.

APPEAL by protestants from *Bone, J.,* February Civil Term 1956 of
LENOIR.

This is a proceeding instituted before the North Carolina Utilities
Commission (hereinafter called the Commission) by the Carolina
Power and Light Company (hereinafter called the Power Company)
on 25 February 1955.

The essential facts found by the Commission are as follows:

1. That prior to 29 February 1952 the Spence Drive and Lawrence
Hill Sections, then outside the corporate limits of the City of Kinston,
were served by the Tidewater Power Company; that the Tidewater
Power Company extended service to these areas at the request of the
City of Kinston because at that time the City's generating facilities

were inadequate to provide proper service to these and other sections outside of its corporate limits.

2. That on 29 February 1952, the Power Company acquired by purchase all of the properties of the Tidewater Power Company, and as owner continued to provide electric service to all sections theretofore served by the Tidewater Power Company, including the Spence Drive and Lawrence Hill sections now within the corporate limits of the City of Kinston.

3. That by an ordinance duly passed by the City of Kinston, which became effective on 9 April 1952, as authorized by Article 36 of Chapter 160 of the General Statutes of North Carolina, the City of Kinston annexed and incorporated within its corporate limits the areas referred to herein as the Spence Drive and Lawrence Hill Sections.

4. That the City of Kinston owns and operates its own electric generating plant and electric distribution system as it is authorized to do by Chapter 160, Section 282 of the General Statutes.

5. That the Power Company does not have and never has had any franchise from the City of Kinston to distribute and sell electricity to any citizen residing within the corporate limits of the City of Kinston.

6. That the Power Company, realizing that it had no authority from the City of Kinston to serve electrically customers within the City of Kinston, entered into a contract on 20 January 1955 (which is a part of the record) to sell all of its electric distributing facilities and distribution system within the corporate limits of Kinston to the City of Kinston for the price of $20,000, subject to the approval of the Commission.

7. That if said contract of sale is approved, there will be no cessation of electric service to the customers now served by the Power Company as the electric lines are so located that the City of Kinston can immediately connect same with its own distribution system.

8. That the rates charged by the Power Company are lower than the rates charged by the City of Kinston.

9. That the City of Kinston receives 65% of its revenue from the sale of electricity, a large part of which is used to provide street improvements, street lighting, water and sewerage, playgrounds, and recreational facilities, and police and fire protection, all of which services are available to the annexed areas in question.

10. That the City of Kinston owns and operates its own electric generating plant as well as distribution facilities for the sale of power and electrical energy to its residents and customers, and the said City of Kinston in the operation of its own public utility for such purposes is in a position to provide proper, sufficient and adequate electric service to the residents and consumers of the Spence Drive and Lawrence Hill Sections and desires to do so.

11. That public convenience and necessity do not require and are no longer served by the ownership and operation by the Power Company of its electrical distribution system leading to and within the said Spence Drive and Lawrence Hill Sections which are now within the corporate limits of the City of Kinston.

12. That the City of Kinston has agreed to purchase all the electrical distributing facilities and distribution system of the Power Company within the Spence Drive and Lawrence Hill areas; that the agreement for the purchase and sale of these facilities is made a part of these findings of fact; that said sale is for a reasonable and adequate consideration, in the public interest, and that public convenience and necessity require that said sale should be made to the end that the City of Kinston may furnish adequate service to the areas heretofore annexed and referred to and to the end that all of the customers within the present corporate limits of the City of Kinston, including the annexed areas, may receive adequate and proper electrical service.

From the foregoing findings of fact, the Commission concluded as a matter of law:

"(a) That the Carolina Power and Light Company has no franchise or any certificate of public convenience and necessity to operate within and furnish electrical energy and services to the residents and customers residing within the corporate limits of the City of Kinston, and upon annexation of the areas heretofore referred to, the Company's certificate of public convenience and necessity ceased to exist and should be formally discontinued; that the Carolina Power and Light Company under the statutes and laws of the State of North Carolina cannot acquire any right, authority, franchise or certificate of public convenience and necessity to furnish electrical energy and services to consumers and residents within the corporate limits of the City of Kinston since the City of Kinston owns its own facilities for the generation and distribution of electrical energy and has the legal right to distribute and furnish electrical energy and services to consumers and residents within its corporate limits and within the territories annexed to the said corporate limits as the same have been and may be extended from time to time.

"(b) That under the statutes of the State of North Carolina, as well as the laws of said State, the City of Kinston is authorized to own and operate its own plant and facilities for the generation and distribution of electrical energy and services to the consumers and residents within its corporate limits, and as long as the said City of Kinston continues to operate its said plant and to serve its residents and consumers no privately owned or managed public utility can acquire any authority, franchise or certificate of public convenience and necessity to operate, generate and/or sell or serve residents and consumers with electrical

energy services within the said corporate limits of the said City of Kinston.

"(c) That inasmuch as the said City of Kinston maintains its own facilities for the generation and distribution of power or electrical energy to its consumers and residents within its corporate limits, and inasmuch as the City of Kinston has adequate facilities and is so situated that it can adequately and properly serve all of the consumers and residents within its corporate limits, including these protestants, and said services can and will be furnished at reasonable rates, public convenience and necessity is no longer required and is no longer served by the ownership and operation of the Carolina Power and Light Company of its electrical distribution system within the corporate limits of the said City of Kinston, and the same should be discontinued and the sale of said distribution facilities to the said City of Kinston as set forth in the proposed contract should be, and is hereby, in all things approved and confirmed, and said sale is authorized and as a matter of law is held to be in accord with public convenience and necessity in the interest of the public, including the protestants and all consumers and residents within said corporate limits of the said City of Kinston."

An appropriate order was entered by the Commission on 4 October 1955 authorizing the Power Company to transfer, sell and assign to the City of Kinston its electrical distribution system within the areas of the Spence Drive and the Lawrence Hill Sections of the City of Kinston, in accordance with the provisions of the contract entered into between the Power Company and the City of Kinston.

The protestants filed a petition to rehear, which was denied. Whereupon, they appealed to the Superior Court upon the exceptions which had been overruled by the order denying the petition to rehear.

In the hearing in the Superior Court upon the record as certified by the Commission to the Superior Court of Lenoir County, his Honor found and concluded "that the findings of fact and conclusions of law, with the exception of the two conclusions of law contained in separate paragraphs designated as (a) and (b), of the Commission's order dated October 4, 1955, are supported by competent, material and substantial evidence upon consideration of the whole record, and they and said order should be approved and affirmed; and that said two conclusions of law contained in separate paragraphs designated as (a) and (b) are not relevant to the determination of this appeal."

Judgment confirming the order of the Commission was entered and the protestants appeal therefrom, assigning error.

*Charles F. Rouse, attorney for Carolina Power and Light Company, appellee.*

*Jones, Reed & Griffin, attorneys for protestants, appellants.*
*George B. Greene, Amicus Curiae.*

DENNY, J.   The City of Kinston is not a formal party to this proceeding.  However, in addition to the facts found by the Commission, it appears from the evidence introduced in the hearing below that the City of Kinston serves through its electric distribution system approximately 8,700 customers within its corporate limits, and about 2,400 customers outside its corporate limits.  It further appears, if the agreement entered into by and between the City of Kinston and the Power Company on 20 January 1955 is consummated it will mean the transfer of 238 customers of the Power Company who reside in the Spence Drive and Lawrence Hill Sections to the City of Kinston.

It is conceded by the City of Kinston, appearing by counsel *amicus curiae,* and by the Power Company, that the City and the Power Company are equally equipped and qualified to furnish electric power and energy to the citizens living in the Spence Drive and Lawrence Hill areas.

In addition to the payment of the sum of $20,000 by the City of Kinston to the Power Company for the purchase and transfer of the facilities referred to herein, the City as a further consideration therefor, according to the contract, has agreed to give the Power Company an extension of its present franchise or permit for a period of thirty years for the continued maintenance and operation of certain of its power lines along and across certain designated streets and other public places within the corporate limits of the City of Kinston, which lines serve the Power Company's substations located in or near the City of Kinston.

It also appears from the record in this proceeding that since the Spence Drive and Lawrence Hill Sections were incorporated within the corporate limits of the City of Kinston in 1952, the City has expended approximately $100,000 for water, sewer, and other municipal improvements within said areas.

The City of Kinston does not concede the right of the Power Company to serve customers within its corporate limits without a franchise from the City, and the Power Company does not concede that the action of the City by incorporating the areas involved within its corporate limits, canceled or abrogated its right to continue its service in said areas.  Consequently, in order to avoid a legal controversy between the parties, the agreement involved in this proceeding was entered into.

In our opinion, this appeal turns upon the answer to this question: Does the Power Company, with the consent and approval of the Commission, have the right to sell the facilities involved herein for the consideration set forth in its agreement with the City of Kinston, and thereby permit the City of Kinston to assume the obligation for meeting

the public convenience and necessity for the service heretofore rendered by the Power Company? This question, in our opinion, must be answered in the affirmative.

G.S. 62-27 provides: "The Utilities Commission shall have general power and control over the public utilities and public service corporations of the State, and such supervision as may be necessary to carry into full force and effect the laws regulating the companies, corporations, partnerships, and individuals hereinafter referred to, and to fix and regulate the rates charged the public for service, and to require such efficient service to be given as may be reasonably necessary."

In addition to the powers given to the Commission in Chapter 62 of the General Statutes of North Carolina, the General Assembly has expressly given the Commission certain implied powers as follows: "The Utilities Commission shall also have, exercise, and perform all the functions, powers, and duties and have all the responsibilities conferred by this article, and all such other powers and duties as may be necessary or incident to the proper discharge of the duties of its office." G.S. 62-29.

G.S. 62-96 provides: "Upon finding that public convenience and necessity are no longer served, or that there is no reasonable probability of a utility realizing sufficient revenue from the service to meet its expenses, the Commission shall have power, after petition, notice and hearing, to authorize by order any utility to abandon or reduce its service or facilities."

In our opinion, these statutes give the Commission not only the authority but impose upon it the duty to pass upon such contracts as the one under consideration and to determine whether or not it is in the public interest to permit their consummation.

"The doctrine of convenience and necessity has been the subject of much judicial consideration. No set rule can be used as a yardstick and applied to all cases alike. This doctrine is a relative or elastic theory rather than an abstract or absolute rule. The facts in each case must be separately considered and from those facts it must be determined whether or not public convenience and necessity require a given service to be performed or dispensed with. . . . The convenience and necessity required are those of the public and not of an individual or individuals." *Illinois Cent. R. Co. v. Illinois Commerce Commission,* 397 Ill. 323, 74 N.E. 2d 545; *Utilities Commission v. R. R.,* 233 N.C. 365, 64 S.E. 2d 272; *Utilities Commission v. R. R.,* 238 N.C. 701, 78 S.E. 2d 780.

Public convenience and necessity as it relates to the situation involved in this proceeding, was a question to be determined by the Commission in light of existing circumstances, including the ability of the City of Kinston to meet the public need for the services involved.

*Utilities Commission v. Trucking Co.*, 223 N.C. 687, 28 S.E. 2d 201, and cited cases.

In the hearing below, the protestants offered no evidence except certain exhibits for the purpose of showing that electric rates of the City of Kinston are higher than those of the Power Company. The ability of Kinston to serve the areas satisfactorily otherwise was not challenged.

Certainly the mere fact that the rates of the Power Company are lower than those established by the City of Kinston is not determinative of what is for the best interest of the public as a whole, including the protestants. Neither does it have any material bearing on the question of public convenience and necessity. Moreover, according to the record, the citizens and residents of the Spence Drive and Lawrence Hill Sections were not brought within the corporate limits of the City of Kinston against their will, but at their request. Even so, the procedure followed in this respect has no legal bearing on the question or questions posed on this appeal.

In the case of *City of Indianapolis v. Consumers' Gas Trust Co.* (C.C.A., 7th Cir.), 144 F. 640, *certiorari* denied, 203 U.S. 592, 51 L. Ed. 331, the Court said: "In none of the citations, state or general, are there any reasons stated that seem inconsistent with the proposition that a corporation, engaged in a service of public utility, may contract for a sale to the municipality of all its property therein, either through a condition accepted in the franchise from the city, or through subsequent arrangement. The question whether municipal ownership is favorable to the public interest, is neither involved in, nor open to judicial inquiry."

In the 1935 Supplement to section 450, 2 Pond, Public Utilities, 4th Ed., it is said: "Where the consent of the public utility commission is necessary to the sale of the plant or its product which is necessary to render its service to the public, this consent is essential, and any attempt to make such a disposition independently of the commission exceeds the power of the public utility, and any agreement to that effect is of no force," citing *Crum v. Mt. Shasta Power Corp.*, 220 Cal. 295, 30 P. 2d 30.

In the case of *Sweetheart Lake, Inc., v. Light Co.*, 211 N.C. 269, 189 S.E. 785, this Court, speaking through *Connor, J.*, said: "When a public service corporation, engaged in business as a public utility, has furnished service to a customer through a period of years, the customer is entitled to a continuance of such service, or in the event of a temporary suspension of such service, for good cause, to its restoration, without having first obtained an order to that effect from the State Utilities Commission. In such case, the public service corporation has no legal right to refuse to continue or to restore such service *without having*

*first obtained an order to that effect from the State Utilities Commission."* (Emphasis added.) 73 C.J.S., Public Utilities, Section 8, page 1001, *et seq.*

We hold the convenience and necessity involved in determining whether one utility or another will provide a specific service relates to the public and not to an individual or individuals. *Illinois Cent. R. R. Co. v. Illinois Commerce Commission, supra.*

The Commission has found that public convenience and necessity are no longer served by the ownership and operation of the Power Company of its electrical distribution system within the corporate limits of the City of Kinston. And by statute, an order of the Commission is *prima facie* just and reasonable. G.S. 62-26.10; *Utilities Commission v. Ray,* 236 N.C. 692, 73 S.E. 2d 870.

Moreover, the essential and pertinent findings of fact by the Commission are supported by uncontradicted evidence which is competent, material and substantial. Therefore, the judgment of the court below will be upheld.

Affirmed.

JOHNSON, J., not sitting.