BLUE RIDGE ELECTRIC MEMBERSHIP CORPORATION v. DUKE POW-
ER COMPANY, DEFENDANT AND CHARLES A. CURTIS AND WIFE,
BERTIE H. CURTIS, ADDITIONAL DEFENDANTS.

(Filed 12 December 1962.)

**1. Electricity § 2—**

The court will take judicial notice that a contract between a power
company and an electric membership corporation is in the form approved
by the Utilities Commission and therefore equivalent to an order of the
Commission subject to its right to review, revoke, or remand.

**2. Same—**

The right of a person seeking electrical service to choose between
competing vendors should not be denied except for some cogent reason.

**3. Same—**

Plaintiff membership corporation and defendant power company had
constructed their respective transmission lines, one approaching the other
at a 45 degree angle and terminating 350 feet from the other. *Held:* Under
the provisions of the contract between the parties that neither should
furnish electricity to premises capable of being served by secondary lines
not exceeding 300 feet from existing transmission lines of the other,
except if ordered by duly constituted authority, the owners of premises
within 300 feet of the existing transmission lines of both are entitled to
select either vendor, regardless of which transmission line was first
constructed.

APPEALS by defendant and additional defendants from *Froneberger,
J.,* February 1962 Term of CALDWELL.

This action was begun 11 September 1961. Plaintiff asked for in-
junctive relief preventing defendant Power Co. from selling electric
current to the owners of four homes situate on the northeast side of
U.S. 321. One of these properties is now owned by the additional de-
fendants Curtis, who were permitted to come in as defendants to
challenge the right of plaintiff to the relief sought.

Plaintiff is a corporation created pursuant to the provisions of c.
117 of the General Statutes. It purchases and distributes electric cur-
rent to its members in Caldwell and adjoining counties.

Power Co. is public utility generating and selling current at whole-
sale and retail. Plaintiff is one of its customers and has been for more
than twenty years. Plaintiff purchases current from Power Co. under
contracts containing the following provision:

"Neither party shall furnish or offer to furnish electric energy to
anyone who, at the time of the proposed service, is receiving electric
service from the other, or whose premises are capable of being served
by the existing facilities of the other without extension of its distri-
bution system other than by the construction of secondary lines not

exceeding 300 feet in length, nor shall either party unless ordered so to do by a properly constituted authority, duplicate the other's facilities, except insofar as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines." Plaintiff alleged the sale by Power Co. to the named property owners violated the quoted provision of the contracts, which had been approved by the North Carolina Utilities Commission.

Power Co. admitted it was selling current to plaintiff pursuant to the contracts containing the quoted provision. It denied the contracts had been approved by the Utilities Commission and denied that the sales of current to the named property owners were prohibited by the contracts between plaintiff and Power Co. It sought an affirmative adjudication with respect to its right to sell to the owners of the four homes.

Additional defendants Curtis alleged: Their home could be conveniently served by plaintiff or Power Co. Their home was within 300 feet of the distribution lines of plaintiff and defendant Power Co. They did not want to become a member of plaintiff, but desired to purchase current from Power Co.

The parties waived a jury trial. They stipulated the facts except facts relating to past conduct of plaintiff and Power Co. asserted by Power Co. as a practical interpretation of the quoted portion of the contract affording it the right to serve defendants Curtis and the other property owners.

The court found there had been no interpretation of the contract by the parties with respect to the question presently presented. On this finding and the facts as stipulated, it concluded Power Co. could not serve the owners of the four homes. It permanently enjoined Power Co. from serving defendants Curtis and the three other property owners. Power Co. and defendants Curtis excepted to the findings and conclusions and appealed.

*Claude F. Seila and Dickson Whisnant for plaintiff appellee.*

*Townsend and Todd by Folger Townsend,, Carl Horn, Jr., and William I. Ward, Jr., for appellant Duke Power Company.*

*A. R. Crisp for defendant appellants Curtis.*

RODMAN, J.    Contracts between public utilities and membership corporations containing provisions restricting the right of one of the contracting parties to provide service to applicants have fertilized the field, and controversy thrives. *Membership Corp. v. Light Co.,* 255 N.C. 258, 120 S.E. 2d 749; *Power Co. v. Membership Corp.,* 253 N.C. 596, 117 S.E. 2d 812, s.c. 256 N.C. 62, 122 S.E. 2d 782; *Member-*

*ship Corp. v. Light Co.*, 253 N.C. 610, 117 S.E. 2d 764, s.c. 256 N.C. 56, 122 S.E. 2d 761; *Montana-Dakota Util. Co. v. Williams E. Coop.*, 263 F. 2d 431, 70 A.L.R. 2d 1318; *Pennsylvania W. & P. Co. v. Consolidated G., E. L. & P. Co.*, 184 F. 2d 552. Not only are the courts called upon to construe and pass upon the validity of such contracts, but utility commissions are called upon to accord to prospective consumers the right to select between competing vendors. See *Pee Dee E. M. Corp. v. Duke Power Co.*, decided by our Utilities Commission 31 January 1961, reported 37 PUR. 3d 407.

The contract we are now called upon to interpret was considered in *Power Co. v. Membership Corp., supra.* We then said it was binding on the parties because approved by the Utilities Commission. The statement there made was based on judicial admissions. It now appears the contracts relied on have not been formally approved by the Commission; but we take judicial notice of the fact that they are in the form approved by our Utilities Commission subject to complaint and hearing and as such, the equivalent of an order of the Commission, subject, of course, to the right of the Commission to review, revoke, or amend. *Pee Dee E. M. Corp. v. Duke Power Co., supra.*

Since the court found that the parties have not, by past conduct, intentionally interpreted the contract, we must interpret it in the light of the stipulated and admitted facts.

In addition to the facts already stated, the parties stipulated and the court found these facts: (1) Plaintiff, in 1955, extended its distribution line on the southeast side of U.S. 321 to provide electricity to the Caldwell Agricultural Fair. (2) In 1958 Power Co. extended its distribution system to serve a house to be built by Raymond Craig. This extension did not parallel plaintiff's lines but approached plaintiff's lines at an angle approximating 45 degrees. It terminated 350 feet from plaintiff's line. (3) Residences now owned by Perry Triplett, Harold Bean, Charles Curtis, and W. L. Thompson were constructed in 1961. Each of these homes is within 300 feet of plaintiff's distribution line constructed in 1955 and Power Co.'s line constructed in 1958. All are in a rural area of Caldwell County. (4). Power Co., at the request of the owners, connected its service lines to each of these residences and was furnishing them with electric current prior to the institution of this action. Both plaintiff and Power Co. are capable of rendering electric service to anyone they are permitted to serve legally under the contracts between the parties.

The record does not disclose whether plaintiff was requested and refused to extend its distribution line so as to serve the house to be built by Raymond Craig in 1958. Significantly, plaintiff does not suggest that Power Co. violated the letter or spirit of its contract in

1958 when it extended its distribution line for the purpose of providing current to the Raymound Craig property.

What then are the rights as well as the duties of plaintiff and defendant Power Co.? No answer should be given without thoughtful consideration of the rights of those for whose benefit Membership Corp. and Power Co. were created and now exist. Unless compelled by some cogent reason, one seeking electric service should not be denied the right to choose between vendors. It is well settled that a public utility such as Power Co. cannot, without express governmental authority, cease to provide the services for which it was created. *Utilities Comm. v. Casey,* 245 N.C. 297, 96 S.E. 2d 8; *Sweetheart Lake, Inc. v. Light Co.,* 211 N.C. 269, 189 S.E. 785; *Montana-Dakota Util. Co. v. Williams E. Coop., supra;* 36 Am. Jur. 573.

Here the contracting parties recognized this salutary principle by inserting in the contract the clause giving "constituted authority" the power to compel service notwithstanding the agreement not to duplicate service. The contract does not say, as plaintiff would interpret it, that the party who first builds a distribution line shall have the exclusive right to serve all potential customers, then in existence or thereafter created, who are within 300 feet of its line. The right to serve depends on conditions existing at the time the service is sought. When a residence is constructed midway between two distribution lines more than 300 feet apart, such residence is, in the language of the contract, "capable of being served by the existing facilities of the other (either) without extension of its distribution system other than by the construction of secondary lines not exceeding 300 feet in length. . ."

The distribution line was contructed in 1958 to serve Raymond Craig, then without service. This construction was not prohibited by the contract. Under such circumstances, neither party would be prohibited from subsequently serving any customer within 300 feet of its existing distribution line. In reaching this conclusion we have not overlooked plaintiff's assertion that the opposite conclusion was reached when we were called upon to interpret a similar contract in *Membership Corp. v. Light Co., supra.* What is here said is not in conflict with the conclusion then reached. The differing results are due to differences in the factual situations. There Light Co.'s transmission line was crossing Membership's transmission line, necessarily bringing the two transmission lines within 300 feet of each other. There Light Co., presumably in recognition of the proximity of the transmission lines, disclaimed any right to retail current from the interconnecting line. There no one was demanding service from either of the parties.

Since the home owners, exercising their rights, had requested and were being served by Power Co. as permitted by the contract between the two distributors, the court erred in requiring Power Co. to discontinue that service and in forbidding future service to parties within 300 feet of Power Co.'s transmission line. Parties in rural areas living within 300 feet of two transmission lines which are separated by more than 300 feet may purchase current from either. Since defendants Curtis and others had elected to purchase current from Power Co., which had the right to serve, the court should have enjoined plaintiff from interfering with the contracts between Power Co. and its customers.

Reversed.