CENTRAL ELECTRIC MEMBERSHIP CORPORATION v. CAROLINA POWER & LIGHT COMPANY, DEFENDANT AND HALES & HUNTER COMPANY, INTERVENOR DEFENDANT.

(Filed 15 January, 1965.)

1. **Electricity § 2—Evidence held for jury in action to enjoin power company from servicing customer in violation of contract with membership Corporation.**

   Evidence permitting the inference that a power company, upon learning of a proposed industrial development, extended its lines to within 300 feet of the site for the purpose of being able to offer electric service to the owner is sufficient to be submitted to the jury in an action by a membership corporation, whose lines were already within 300 feet of the site, to restrain the power company from supplying such electricity to the site on the ground that such act violated provisions of a contract between the power company and the membership corporation prohibiting either from serving customers more than 300 feet from its lines when such customers were within 300 feet from the lines of the other.

2. **Same—**

   A contract between an electric membership corporation and a power company in regard to service of customers situate within 300 feet of their respective lines, when approved by the Utilities Commission, is valid.

3. **Same; Utilities Commission § 4—**

   The Utilities Commission has authority to regulate which customers shall be served respectively by an electric membership corporation and a power company, notwithstanding the provisions of a contract between such companies with respect to service.

APPEAL by plaintiff from *Mintz, J.,* May 3, 1964 Civil Session of LEE.

This action was begun against Carolina Power & Light Company (CP&L) in August 1962. Plaintiff seeks to enjoin CP&L from supplying Hales & Hunter Company (H&H) with electricity for the operation of its plant and facilities in Lee County. Plaintiff bases its right to injunctive relief on a contract, dated January 5, 1956, between it and CP&L.

H&H was permitted to intervene. It and CP&L deny the sale of current by CP&L to H&H violates the contract between plaintiff and CP&L. H&H, as an additional defense, alleges the contract, is as to it, void.

The court, at the conclusion of plaintiff's evidence, allowed defendant's motions for nonsuit.

*Crisp & Wells and Teague, Williams and Love for plaintiff appellant.*

*Pittman, Staton & Betts, W. Reid Thompson and A. Y. Arledge for appellee Carolina Power & Light Company.*

*Gavin, Jackson & Williams for intervenor defendant appellee Hales & Hunter Company.*

RODMAN, J. On January 5, 1956, plaintiff and CP&L entered into a contract by which CP&L agreed to sell electricity to plaintiff for resale. Article 8 of that contract, captioned "Service Facilities," provides:

"(a) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall distribute or furnish electric energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system other than by the construction of lines not exceeding three hundred feet in length.

"(b) Neither party, unless ordered so to do by a lawful order issued by a properly constituted authority, shall duplicate the other's facilities, except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines, but no service shall be rendered from such interconnecting facilities in competition with the other party."

Does the quoted portion of the contract, applied to the factual situation disclosed by plaintiff's evidence, entitle it to an order forbidding CP&L from selling electricity to H&H?

The evidence would permit a jury to find these facts: On, and prior to, January 5, 1956, plaintiff and CP&L maintained primary lines for the transmission of electric current to their respective customers in Lee County.

Current is taken from a primary line and by a "secondary" line delivered to the ultimate customer. The point of delivery is usually selected by the customer to suit his convenience.

When the contract with plaintiff was entered into, and until March 3, 1962, CP&L's primary line was on the east of, and parallel to, U. S. Highway 421; plaintiff's primary line was to the east of, and parallel to, the tracks of Southern Railway. Plaintiff had a secondary line, which crossed the tracks of the railway. This line, 85.6 feet long, carried current at 240 volts. It was constructed to serve Gas Terminal, a gasoline distribution plant located on the north side of the McNeill Road. This road provides access to U. S. 421 from points east of Southern Railway.

Until March 3, 1962, the lines of plaintiff and CP&L were more than 1200 feet apart. On that date, CP&L constructed a primary line, 930 feet in length, in an eastwardly direction along the north side of the McNeill Road. Construction of the line continued in a northwardly direction for 200 feet, or thereabouts. From that point, a secondary line, carrying 240 volts, was constructed at some later date. This secondary line was about 19 or 20 feet in length. Notwithstanding the construction of the new lines on March 3, 1962, and the subsequent construction of the short secondary line, none of CP&L's lines are within 300 feet of plaintiff's three phase line along the railroad or its extension therefrom serving the gas terminal.

On February 1, 1962, H&H acquired a leasehold estate in a tract of land north of the McNeill Road, adjacent to and west of Southern Railway. H&H leased the property for the purpose of constructing and operating a feed mill thereon. On January 29, 1962, plaintiff's manager, having learned of the proposed construction, communicated with H&H, offering to supply it with electricity. The mill constructed by H&H has a monthly demand of 300 KW and a monthly consumption of 35,000 to 40,000 KWH. Plaintiff has the capacity to supply the demands of H&H. Plaintiff continued to negotiate with H&H until late in the spring or summer of 1962. The negotiations terminated when H&H made a contract with CP&L.

Shortly after securing the lease, H&H began construction of a feed mill. The mill, when this case was tried, was in operation. Most of the building is within 300 feet of plaintiff's lines. A portion of the plant is more than 300 feet from plaintiff's line.

CP&L, on March 3, 1962, having learned of the proposed construction of the feed mill, and desirous of supplying electricity to operate the mill, extended its lines so they would be within 300 feet of the plant H&H would erect.

In July 1962, H&H and CP&L executed a contract by which CP&L agreed to provide H&H with electric current beginning December 11, 1962 (presumably the date H&H expected to begin operations), "or from the date the electricity is first taken hereunder, whichever is earlier." Pursuant to that contract, CP&L is supplying H&H with electricity. The current is delivered at the end of CP&L's secondary line, which connects with the primary line constructed in March 1962. H&H selected the point where current would be delivered to it. This point is more than 300 feet — approximately 325 feet — from plaintiff's lines. Plaintiff was willing to deliver current to any point H&H might select, even though it would require construction in excess of 300 feet.

Accepting as true the foregoing factual statement, as a jury may, has plaintiff established a violation of the provisions of Article 8 of the contract of January 5, 1956? In our opinion, the answer must be "yes." That conclusion follows naturally and inevitably, we think, from interpretations which we have heretofore placed on identical contractual provisions.

In *Membership Corp. v. Light Co.*, 255 N.C. 258, 120 S.E. 2d 749, we held that paragraph (b) did not enlarge the 300 foot area in which an exclusive monopoly was created. Bobbitt, J. said: "It seems clear that all of Article 8 relates to the area defined in paragraph (a), an area not exceeding 300 feet from existing lines of plaintiff or defendant; that paragraph (a) prohibits *competitive service* in this area; and that paragraph (b) prohibits the construction of facilities in this area except when necessary to provide service beyond its limits * * *.

"In our opinion, paragraphs (a) and (b), both under the caption, 'Service Facilities,' are in *pari materia* and must be construed together; and, when so construed, the restriction imposed upon a party who constructs an interconnecting facility, that is, one that crosses over or under a previously constructed line of the other, is that *it may not distribute electric energy therefrom to anyone served by the other or whose premises can be served by the other or whose premises can be served by the other from its existing facilities or extensions thereof not exceeding 300 feet.*" (Emphasis supplied.)

In *Membership Corp. v. Power Co.*, 258 N.C. 278, 128 S.E. 2d 405, the party seeking service was within 300 feet of the lines of plaintiff and defendant. To that extent, the position of present plaintiff, defendant and intervenor are identical with the position of plaintiff, defen-

dant and intervenor in the decision rendered in that case. There is, however, this vital distinction between that case and this. There, Power Company, in 1958, extended its lines to serve one Craig. His property was entirely outside the 300 foot area. Power Company's right to serve Craig was not challenged. We said: "Significantly, plaintiff does not suggest that Power Co. violated the letter or spirit of its contract in 1958 when it extended its distribution line for the purpose of providing current to the Raymond Craig property."

Since the Craig property was entirely in "free territory," each contracting party had a right to compete for his business. When the Power Company won that race in fair competition (or by default of Membership Corporation), it had properly secured a base on which it could claim the protection of the first paragraph of Article 8. Thus, in that case, the claims of the opposing parties neutralized each other. That result is stated in the 1962 decision, *Membership Corp. v. Power Co.*, *supra*, in this language: "Under such circumstances, neither party would be prohibited from subsequently serving any customer within 300 feet of *its existing* distribution line." (Emphasis supplied.)

Here, the jury can fairly infer that CP&L's sole purpose in extending its lines in March 1962 was to provide service to one who *could* be served by plaintiff without extending plaintiff's lines outside the area in which it had a monopoly. To permit CP&L to construct a line for the sole purpose of serving an industry which could be served by the other party to the contract, without extending its lines more than 300 feet, would, for practical purposes, reduce Article 8 to an empty shell. Such a construction would permit a membership corporation or a private power company, upon learning that some new business is to be located in proximity to the lines of the other, to extend its lines so they are a mere two or three feet more than 300 feet from the line of the other party, and then insist it has the right to serve the new industry under the rule enunciated in *Membership Corp. v. Power Co.*, *supra*. We cannot conceive that the parties so intended when they made their contract, or the Utilities Commission so understood when it gave its approval to this form of contract.

We are of the opinion, and hold, that plaintiff's evidence is sufficient to require submission of appropriate issues to a jury.

Intervenor's contention that it is not bound by the contract between plaintiff and CP&L is without merit. Plaintiff's evidence suffices to show the Utilities Commission has given its approval to contracts identical to the contract in this case. Because of such approval, and the express reservation of the right of the Commission to compel CP&L to render service, we have held similar contracts not unlawful. *Mem-*

*bership Corp. v. Light Co., supra; Membership Corp. v. Power Co., supra; Membership Corp. v. Light Co.,* 253 N.C. 610, 117 S.E. 2d 764; *Power Co. v. Membership Corp.,* 253 N.C. 596, 117 S.E. 2d 812.

Notwithstanding any finding which the jury may make, or our interpretation of the contract between plaintiff and CP&L, intervenor is at liberty to apply to the Utilities Commission for an order compelling CP&L to continue to serve. Having plenary power to act, the Commission will undoubtedly do what is meet and proper under the circumstances.

Reversed.