166 S.E.2d 663 (1969)
275 N.C. 250
STATE of North Carolina ex rel. UTILITIES COMMISSION, and Carolina Power & Light Company and Acme Electric Corporation and Acme Electric Corporation of Lumberton, North Carolina, Appellees,
v.
LUMBEE RIVER ELECTRIC MEMBERSHIP CORPORATION, Appellant.
No. 17.
Supreme Court of North Carolina.
April 9, 1969.
*667 Crisp, Twiggs & Wells, Raleigh, for appellant.
Edward B. Hipp, Commission Atty., and Larry G. Ford, Associate Commission Atty., Raleigh, for North Carolina Utilities Commission, appellee.
Sherwood H. Smith, Jr., Charles F. Rouse and W. Reid Thompson, Raleigh, for Carolina Power & Light Co., appellee.
McLean & Stacy, Lumberton, for intervenor appellee.
LAKE, Justice.
Acme desires to purchase from CP&L the electric power it requires for the operation of its manufacturing plant. CP&L desires to sell that power to Acme. They have entered into a contract for such purchase and sale. We are not required to determine whether Acme could compel an unwilling CP&L to serve it.
Lumbee is a customer of CP&L. We are not, however, presently required to determine whether, as such customer, it may bring a proceeding before the Utilities Commission to prevent CP&L from constructing an extension of CP&L's facilities on the theory that such extension will be unprofitable and, therefore, may, at some future date, make it necessary for CP&L to charge Lumbee rates higher than CP&L would otherwise need in order to earn a fair return on the fair value of CP&L's total plant. Lumbee does not proceed here upon that theory. While it does not stipulate that CP&L will derive from its service to Acme a fair return upon that portion of its total rate base attributable to such service, Lumbee does not allege the contrary. It proceeds here upon the theory that it, as a supplier of electric power, has the exclusive right to serve Acme though Acme prefers another supplier.
Again, we do not presently have before us the question of Lumbee's right to have the Utilities Commission assign to Lumbee, as its exclusive service area, any territory pursuant to G.S. § 62-110.2(c). That statute confers upon the commission the authority, and imposes upon it the duty, to make such assignments to electric membership corporations, such as Lumbee, and to electric utility companies, such as CP&L, of all territory outside the corporate limits of municipalities and more than 300 feet from the lines of any such supplier. It provides that "in order to avoid unnecessary duplication of electric facilities," the commission shall, "as soon as practicable after January 1, 1966," so assign all such territory "in accordance with public convenience and necessity." The record before us shows that, despite the passage of three years, there has been no such division of such territory in Robeson County, either by agreement of the suppliers or by order of the commission. Originally, in this proceeding Lumbee combined its prayer for a restraining order against CP&L with its application for an order so assigning to Lumbee the territory which includes the Acme plant. However, Lumbee did not except to the order of the commission which separated its application for such assignment of territory from its complaint against CP&L. Only the latter was heard by the commission and it alone is now before us.
Thus, the question before us is whether Lumbee, as a competitor of CP&L, has a right, in the absence of such assignment of territory by the commission and in the absence of any contract between Lumbee and CP&L or between Lumbee and Acme, to an order by the Utilities Commission forbidding CP&L to serve Acme in accordance with Acme's request. Lumbee asserts that it is entitled to the entry of such order solely because, at the time Acme's initial need for service arose, Lumbee had in operation a single-phase power line within 300 feet of a portion of Acme's plant, and a three-phase line a short distance further therefrom, whereas CP&L had to build approximately four miles of line, substantially paralleling and duplicating Lumbee's line, in order to reach the Acme plant.
*668 In the absence of a valid grant of such right by statute, or by an administrative order issued pursuant to statutory authority, and in the absence of a valid contract with its competitor or with the person to be served, a supplier of electric power, or other public utility service, has no territorial monopoly, or other right to prevent its competitor from serving anyone who desires the competitor to do so. In Blue Ridge Electric Membership Corp. v. Duke Power Co., 258 N.C. 278, 128 S.E.2d 405, this Court said, "Unless compelled by some cogent reason, one seeking electric service should not be denied the right to choose between vendors." In Pitt & Greene Electric Membership Corp. v. Carolina Power & Light Co., 255 N.C. 258, 120 S.E.2d 749, and in Carolina Power and Light Co. v. Johnston County Electric Membership Corp., 211 N.C. 717, 192 S.E. 105, this Court recognized that, except as restricted by contract, electric membership corporations and public utility companies supplying electricity are free to compete in the rural areas of this State, notwithstanding the fact that such competition may result in substantial dupulication of electric power lines and other facilities.
It is well settled, that the police power of the State is broad enough to include a statute providing that a public utility company, desiring to serve a new area, must obtain from the Utilities Commission a certificate that public convenience and necessity requires the proposed extension of its distribution facilities. It is, however, equally well settled that the Utilities Commission is a creature of the Legislature and has no authority to restrict competition between suppliers of electricity, except insofar as that authority has been conferred upon it by statute. State of North Carolina ex rel. Utilities Comm. v. Thurston Motor Lines, 240 N.C. 166, 81 S.E.2d 404; North Carolina Utilities Comm. v. Atlantic Greyhound Corp., 224 N.C. 293, 29 S.E.2d 909.
Obviously, the commission may not, by its rule or order, forbid the exercise of a right expressly conferred by statute. See North Carolina Utilities Comm. v. Atlantic Coast Line R. R. Co., 224 N.C. 283, 29 S.E.2d 912. The legislative body is under no compulsion to exercise the police power of the State to its fullest extent, or to exercise it in a manner which the courts, or an administrative agency, may deem wise or best suited to the public welfare. Zopfi v. City of Wilmington, 273 N.C. 430, 160 S.E.2d 325; In re Markham, 259 N.C. 566, 131 S.E.2d 329. It is for the Legislature, not for this Court or the Utilities Commission, to determine whether the policy of free competition between suppliers of electric power or the policy of territorial monopoly or an intermediate policy is in the public interest. If the Legislature has enacted a statute declaring the right of a supplier of electricity to serve, notwithstanding the availability of the service of another supplier closer to the customer, neither this Court nor the Utilities Commission may forbid service by such supplier merely because it will necessitate an uneconomic or unsightly duplication of transmission or distribution lines. In such event, it is immaterial whether the Legislature has imposed upon such supplier a correlative duty to serve.
In the light of these principles, we turn, to G.S. § 62-110.2, enacted in 1965, prior to which time there was no restraint upon competition in rural areas between electric membership corporations and public utility suppliers of electric power except as established by contract. Pitt & Greene Electric Membership Corp. v. Carolina Power & Light Co., supra.
The former absence of statutory provisions restricting competition between electric membership corporations and public utility suppliers of electric power gave rise to many contracts between these two types of suppliers designed to fix their respective territorial rights, which contracts, in turn, gave rise to much litigation. *669 See Blue Ridge Electric Membership Corp. v. Duke Power Co., supra. In the hope of putting an end to or reducing this turmoil, the 1965 Legislature enacted G.S. § 62-110.2, the language of which was the result of collaboration and agreement between the two types of suppliers.
Subsection (c) of this statute provides for the assignment of territory by the commission above mentioned. Subsection (b) of this statute sets forth in ten numbered paragraphs specific rules governing the right of suppliers to serve in situations there described. Provisions pertinent to this appeal are as follows:
"(b) In areas outside of municipalities, electric suppliers shall have rights and be subject to restrictions as follows:
"(1) Every electric supplier shall have the right to serve all premises being served by it, or to which any of its facilities for service are attached, on April 20, 1965.
"(2) Every electric supplier shall have the right, subject to subdivision (4) of this subsection, to serve all premises initially requiring electric service after April 20, 1965 which are located wholly within 300 feet of such electric supplier's lines as such lines exist on April 20, 1965, except premises which, on said date, are being served by another electric supplier or to which any of another electric supplier's facilities for service are attached.
"(3) Every electric supplier shall have the right, subject to subdivision (4) of this subsection, to serve all premises initially requiring electric service after April 20, 1965 which are located wholly within 300 feet of lines that such electric supplier constructs after April 20, 1965 to serve consumers that it has the right to serve, except premises located wholly within a service area assigned to another electric supplier pursuant to subsection (c) hereof.
"(4) Any premises initially requiring electric service after April 20, 1965, which are located wholly or partially within 300 feet of the lines of one electric supplier and also wholly or partially within 300 feet of the lines of another electric supplier, as each of such supplier's lines exist on April 20, 1965, or as extended to serve consumers that the supplier has the right to serve, may be served by such one of said electric suppliers which the consumer chooses, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises.
"(5) Any premises initially requiring electric service after April 20, 1965 which are not located wholly within 300 feet of the lines of any electric supplier and are not located partially within 300 feet of the lines of two or more electric suppliers may be served by any electric supplier which the consumer chooses, unless such premises are located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) hereof, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises.
* * * * * *
"(10) No electric supplier shall furnish electric service to any premises in this State outside the limits of any incorporated city or town except as permitted by this section * * *."
Subsection (a)(1) of this statute defines "premises" to mean "the building, structure, or facility to which electricity is being or is to be furnished," subject to a proviso not presently material. Consequently, it is the plant of Acme, and not the tract upon which it is located, which constitutes the "premises" here involved, as that term is used in subsection (b). Thus, paragraph (1) of subsection (b), *670 above quoted, does not confer upon Lumbee the right to serve the Acme plant by reason of Lumbee's former service to the residence and the electric signs previously located on this tract. For the same reason, the "premises" here involved are located partially but not wholly within 300 feet of where Lumbee's single-phase line was when Acme's initial need for electric service arose. Consequently, the right of CP&L to construct its line here in question and to serve the Acme plant is governed by paragraphs (3), (4) and (5), above quoted.
CP&L's right, if any, under paragraphs (3) and (4) of subsection (b), to serve Acme arises by reason of its extension of its lines after April 20, 1965, for the purpose of serving Acme and, therefore, depends upon the right of CP&L to extend its lines for that purpose. Thus, the controlling provision of the statute is paragraph (5).
At the time this proceeding was commenced, and prior thereto, the location of the Acme plant was not wholly within 300 feet of any line of any electric supplier, nor was it partially within 300 feet of the lines of two or more electric suppliers. As of that time, paragraph (5) of subsection (b) of the statute plainly and unequivocally established the right of Acme to choose CP&L as its supplier and the right of CP&L to serve this plant if Acme so chose it. Acme did so choose. Thus, the line constructed to the plant by CP&L after April 20, 1965 was constructed to serve a consumer CP&L had the right to serve. This brought paragraphs (3) and (4) of subsection (b) of the statute into operation. Since the statute expressly conferred upon CP&L the right to serve this plant, the Utilities Commission was not authorized to forbid CP&L to do so merely because Lumbee desired to perform the service and could reach the plant by an extension of its lines substantially shorter than the lines required to be built by CP&L.
We express no opinion as to the authority of the Utilities Commission, on its own motion or upon complaint, to forbid construction by a public utility company for the purpose of serving a customer located similarly to Acme upon an allegation and a showing that such construction would be so wasteful of that supplier's own financial resources as to endanger its future capacity to serve adequately at reasonable rates. Lumbee does not allege such a situation.
Lumbee contends that since the Act of 1965 inserted G.S. § 62-110.2 into the chapter of the General Statutes relating to the regulation of public utility companies, this statute must be read in connection with other provisions of that chapter and, consequently, the powers conferred upon the commission by those other sections apply also to the specific situations dealt with in G.S. § 62-110.2. It is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application. State ex rel. Utilities Commission v. Carolina Coach Co., 236 N.C. 583, 73 S.E.2d 562. In such situation the specially treated situation is regarded as an exception to the general provision. Young v. Davis, 182 N.C. 200, 108 S.E. 630. This rule of construction is especially applicable where the specific provision is the later enactment. National Food Stores v. North Carolina Board of Alcoholic Control, 268 N.C. 624, 151 S.E.2d 582. It is true, as contended by Lumbee, that when statutes "deal with the same subject matter, they must be construed in pari materia and harmonized to give effect to each." Becker County Sand & Gravel Co. v. Taylor, 269 N.C. 617, 153 S.E.2d 19. When, however, the section dealing with a specific matter is clear and understandable on its face, it requires no construction. State Highway Commission v. Hemphill, 269 N.C. 535, 153 S.E.2d 22; Davis v. North Carolina Granite Corporation, 259 N.C. 672, 131 S.E.2d 335; State ex rel. Long v. Smitherman, 251 N.C. 682, 111 S.E.2d 834. In such case, "the Court is *671 without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain." North Carolina Board of Architecture v. Lee, 264 N.C. 602, 142 S.E.2d 643.
It is for the Legislature, not the Court or the Utilities Commission, to determine whether a special provision should be made for the regulation of competition between electric membership corporations and public utility companies rendering electric service. Here, the Legislature has made that determination in clear, unequivocal terms. Consequently, it was unnecessary for the Utilities Commission to inquire into or determine the general economic or esthetic effect and advisability of the duplication of Lumbee's line by CP&L. In view of the policy expressly declared by the Legislature, such determination by the commission would have been immaterial. Consequently, the commission properly dismissed the complaint without making such inquiry.
Affirmed.