STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, AND NORTH CAROLINA ASSOCIATION OF LAUNDERERS AND CLEANERS v. PIEDMONT NATURAL GAS COMPANY, INC.

(Filed 24 May, 1961.)

**1. Appeal and Error § 21—**

A sole exception to the judgment presents for review only whether error of law appears on the face of the record.

**2. Gas § 3:   Utilities Commission § 3—**

The reasonableness of classifications of customers of a utility depends upon a number of factors, such as quantity of energy used, the time of use, the manner of service, and the equipment which the utility must provide and maintain in order to take care of the requirements of a particular class of customers.

**3. Same—**

The fact that coin-operated washers and dryers in launderettes are substantially the same as those used in residences has no bearing upon whether this class of customers should be given the same rates as residential users or should be given rates other than the usual commercial classification, and a classification of the Utilities Commission based upon evidence of such similarity of equipment is not supported by substantial and material evidence.

**4. Same—**

Variances in the day to day use of gas by a particular classification of customers and the time of day when such customers consume their peak load may be sufficient in some instances to affect rates to such customers, since a utility must invest sufficient capital in plant and equipment to meet the peak demands.

**5. Same—**

A utility must make no unreasonable discrimination in rates between customers receiving the same kind and degree of service.

**6. Same—**

The fact that customers of a launderette participate by inserting coins in its washing and drying machines is immaterial to, and constitutes no basis for, a classification of such commercial users distinct from other commercial customers of the utility.

**7. Same—**

Rates of different utilities are not competent or material in fixing the rates of another utility in the absence of evidence showing the comparative costs and conditions under which the respective utilities operate.

**8. Utilities Commission § 5—**

Where an order of the Utilities Commission granting complainants a reduction in rates must be reversed because findings of the Utilities Commission are not supported by competent, material, and substantial evidence, the remand to the Commission should not ordinarily direct

dismissal, but the Commission should be allowed to hear additional evidence in order to determine in the manner provided by law whether there is any unfair or unjust discrimination in the rates charged complainants.

APPEAL by complainant from *Campbell, J.,* 16 January 1961, in Chambers, Charlotte, North Carolina. From MECKLENBURG.

This cause was instituted before the North Carolina Utilities Commission (hereinafter referred to as Commission) by a complaint verified on 11 September 1959 and filed with said Commission by the North Carolina Association of Launderers and Cleaners (hereinafter referred to as complainant or complainants) on behalf of its members operating coin-operated and fast-service laundries in the area served by the Piedmont Natural Gas Company, Inc. (hereinafter referred to as Piedmont), alleging that the commercial rates now applicable to them in Schedule No. 11 are excessive, unreasonable, unfair, unjust and unwarranted, and that they are entitled to rates as low as those provided for residential users in Schedule No. 10, or a rate substantially lower than the present commercial Schedule No. 11.

The names and addresses of the 41 members of the complainant Association on whose behalf the complaint was filed are set out in Schedule A, attached to and made a part of the complaint.

Piedmont shortly thereafter filed a request for a general rate increase applicable to all its customers and this cause was heard as a companion case to the general rate increase application. This complainant and its members were also protestants to the general rate increase application, and the order entered therein contained the following provision: "The rates and charges which were in effect on October 16, 1959, shall be reinstated as the lawful rates and charges of the Company, after amendments in accordance with the order of this Commission in Docket G 9, Sub 31," (which is the docket in this proceeding). The order of the Commission denying Piedmont's application for a general rate increase was reversed on appeal to the Superior Court, and the order of the Superior Court, reversing the order of the Commission and remanding the cause to the Commission for further findings and determination, was affirmed on appeal to this Court, *ante* 536.

Piedmont's rates:

Schedule No. 10, for residential users, is as follows:

"First 300 cu. ft. or less per month $1.35. Next 700 cu. ft. per month @ $0.29 per hundred cu. ft. Next 2,000 cu. ft. per month @ $0.165 per hundred cu. ft. All over 3,000 cu. ft. per month @ $0.11 per hundred cu. ft."

Schedule No. 11, for commercial and industrial services, is as follows:

"First 300 cu. ft. or less per month $1.35. Next 700 cu. ft. per month @ $0.29 per hundred cu. ft. Next 9,000 cu. ft. per month @ $0.165 per hundred cu. ft. All over 10,000 cu. ft. per month @ $0.12 per hundred cu. ft."

The Commission's findings of fact are as hereinafter set out:

"1. That the specific type of laundry under consideration in this proceeding and the use made thereof by the public is not so substantially different from that used by Piedmont's residential customers as to justify a difference in rates.

"2. That the washing machines and dryers referred to by complainants and Piedmont are similar to the type of machines used by the residential customers, to such an extent as to justify the application of similar rates.

"3. That the laundries referred to by complainants and Piedmont in this case involve such customer participation in their operation as to render them dissimilar from other consumers of gas to which Schedule 11 is available to such an extent as to justify their removal from said Schedule 11 so as to permit the application of a rate applicable to residential users.

"4. That the rates charged complainants by Piedmont in Schedule 11 discriminate against the complainants to the extent that they exceed rates charged residential users in Rate Schedule 10 and are therefore unjust and unreasonable."

Upon the foregoing findings of fact the Commission in pertinent part entered the following order:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Piedmont Natural Gas Company, Inc., file a rate schedule with the Commission which will have the effect of reducing its rates for laundries as hereinabove described to its level of rates applicable to residential customers.

"IT IS FURTHER ORDERED that the application of the above-prescribed rates shall become effective on all bills rendered on and after the effective date of this order.

"  *   *   *

"This the 12th day of May, 1960."

Commissioner Eller filed a dissenting opinion to the foregoing order.

This cause came on to be heard in the Superior Court upon appeal by Piedmont, and the court having reviewed the record, examined the law and considered the arguments and briefs of counsel for the complainant and Piedmont, reached the conclusions of law and decision hereinafter stated:

"That the decision and order of the Utilities Commission should be, and is hereby, reversed for that in said decision and order the Commission committed reversible error, and the substantial rights of the appellant have been prejudiced because the findings, inferences, conclusions and decisions in the order of the Commission are affected by errors of law; are unsupported by proper findings; are not supported by, but are contrary to, the competent, material, and substantial evidence in view of the entire record as submitted; and are arbitrary and capricious:

"1. Complainant failed to sustain the burden of establishing that the existing rate schedule and rate classification applicable to the concerns involved are unjust and unreasonable.

"2. The evidence overwhelmingly established a valid basis for a different and higher rate classification for launderettes (coin-operated and quick-service laundries) than for residential customers, it being shown by uncontradicted evidence that the cost of providing gas, the cost of installation, and the cost of service were all higher for launderettes than for residential consumers, and that the launderettes to which the commercial rate schedule (No. 11) has been applicable are commercial, for-profit business operations, as distinguished from domestic customers to whom the residential rate schedule (No. 10) is applicable.

"3. The findings of fact of the Commission are not supported by the evidence and do not constitute a proper basis for the decision and order entered in this proceeding.

"4. The order of the Commission creates discrimination between the launderettes involved in the complaint in this proceeding, and other commercial concerns which are subject to Commercial Rate Schedule No. 11, and gives special treatment to launderettes different from any other commercial concerns, which fails to comply with the requirement of uniform treatment to all customers within the same class, and is unjustified, unreasonable, and discriminatory.

"Accordingly, the decision and order of the Commission is reversed, and this cause is remanded to the Commission with directions to dismiss the complaint of the North Carolina Association of Launderers and Cleaners.

"This the 25th day of January 1961."

The complainant appealed to the Supreme Court, assigning error.

*Stanley Winborne, Vaughan S. Winborne for complainant.*

*McLendon, Brim, Holderness & Brooks; Hubert Humphrey for appellee.*

DENNY, J.    The complainant entered but one exception in the hearing below and that was to the judgment, reversing the decision and order of the Commission and remanding the cause to the Commission with directions to dismiss the complaint of the complainant. Therefore, the exception to the judgment presents this single question: Does error in law appear on the face of the record? *Gibson v. Insurance Co.*, 232 N.C. 712, 62 S.E. 2d 320; *Moore v. Crosswell*, 240 N.C. 473, 82 S.E. 2d 208; *Barnette v. Woody*, 242 NC. 424, 88 S.E. 2d 223; *Goldsboro v. R.R.*, 246 N.C. 101, 97 S.E. 2d 486.

Since the court below held that the findings of fact by the Commission are not supported by, but are contrary to, the competent, material, and substantial evidence set out in the record, and that the inferences and conclusions in the order of the Commission are affected by errors of law, we shall examine and consider the record in light of the ruling of the court below.

Finding of fact No. 1 of the Commission, set out hereinabove, simply finds that the specific type of laundry under consideration in this proceeding is not so substantially different from that used by Piedmont's residential customers as to justify a difference in rates. Likewise, finding of fact No. 2 is to the effect that the washing machines and dryers referred to by the complainants and Piedmont are similar to the type of machines used by Piedmont's residential customers to such an extent as to justify the application of similar rates.

We do not consider the fact that many of the washers and dryers used in coin-operated and fast-service laundries are similar to those used by residential consumers has any material bearing on the question of rates. The coin-operated and fast-service laundries operated by the complainant's members are commercial enterprises and operated for profit. The washers are operated by electricity and not by gas. Gas is used only to heat water for use in the washers and to heat the air in some types of dryers. The evidence is to the effect that the washing machines used by many of the laundries involved are larger than those in residential use. Even so, since gas is used only to heat air in some of the dryers and to heat the water used in the washing machines, and not for the operation of the machines, the type and kind of machines used in a commercial laundry do not constitute a proper basis for determining proper rates for gas used in heating air and water used in such machines.

The test for determining classifications and rates depends upon a number of factors, such as the quantity of gas used, the time of use, the manner of service, and the equipment which the utility must provide and maintain in order to take care of the customers' requirements.

*Utilities Commission v. Municipal Corporations,* 243 N.C. 193, 90 S.E. 2d 519.

The evidence on this record tends to show that the residential customers average using about 25 per cent of maximum capacity or peak load available, while the laundries involved herein use an average of only 11 per cent of the peak load Piedmont has to keep available at all times. It is common knowledge that a residential consumer uses on the average about the same amount of gas each day, dependent of course upon the number of appliances used by the residential customer. The peak period of a residential consumer usually comes at the time meals are being prepared and during the early hours of the night. A utility, however, furnishing gas to its commercial or industrial users must invest sufficient money in its plant and equipment to meet the peak demands of its customers, and when the load falls below the peak, the utility obtains payment only for the percentage of the peak load actually consumed. This may be a sufficient factor in some cases to affect a rate. *Utilities Commission v. Municipal Corporations, supra.*

We said in *Utilities Com. v. Mead Corp.,* 238 N.C. 451, 78 S.E. 2d 290, "There must be substantial differences in service or conditions to justify difference in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service."

Likewise, in *Brown v. Penn. Public Utilities Comm.,* 152 Pa. Super. 58, 31 A. 2d 435, it is said: "The charging of different rates for service rendered under varying conditions and circumstances is not unlawful." Certainly the installation of equipment necessary to furnish an ample amount of gas to heat water and air in quantities sufficient to operate a coin-operated or fast-service laundry for 24 hours a day at peak capacity if required, constitutes service rendered under conditions not applicable to the ordinary residential customers.

Finding of fact No. 3 of the Commission is to the effect that customer participation in the operation of these laundries renders them dissimilar to other consumers of gas to which Schedule No. 11 is available, to such an extent as to justify their removal from Schedule No. 11 and to permit the application of the rates applicable to residential users.

Finding of fact No. 4 is to the effect that the rates charged complainant by Piedmont in Schedule No. 11 discriminates against complainant to the extent that the rates therein exceed those charged residential users in Schedule No. 10, and are, therefore, unjust and unreasonable.

We are unable to ascertain from the evidence on this record how or in what respect the customer participation has any bearing on the question of rates, or why the rates set out in Piedmont's Schedule No.

11 are discriminatory as between coin-operated and fast-service laundries and other commercial customers.

Evidence was admitted without objection in the hearing below that tends to show that all utility companies distributing natural gas in North Carolina, except Piedmont, have on file with the Commission schedules of rates for coin-operated and fast-service laundries that are lower than their commercial rates. However, evidence in which the rates of different utilities are sought to be compared is not competent or proper in the absence of evidence showing the comparative costs and conditions under which the respective companies operate. *Utilities Commission v. Municipal Corporations, supra; Bd. of Supervisors v. Virginia Electric & Power Co.,* 196 Va. 1102, 87 S.E. 2d 139; *Smyth v. Ames,* 169 U.S. 466, 42 L. Ed. 819.

In our opinion, the evidence on this record is insufficient to support the findings of the Commission and the conclusions of law based thereon. *Utilities Com. v. Mead Corp., supra.* However, we think, in the interest of justice, the order entered below should be modified to the extent of allowing the Commission to hear additional evidence in order to determine in the manner provided by law whether or not there is any unfair and unjust discrimination as between the type of service rendered the members of the complainant and other commercial customers under Schedule No. 11, and, if so, to determine whether or not such schedule should be modified in any respect or whether a new schedule of rates should be filed by Piedmont for coin-operated or fast-service laundries, as the evidence tends to show all other utilities distributing natural gas in North Carolina have done.

G.S. 62-70 prohibits discrimination by public service corporations in the following language: "No public utility shall, as to rates or services, make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates or services either as between localities or as between classes of service. The Commission may determine any questions of fact arising under this section."

Except as modified, the judgment below is affirmed.

Modified and affirmed.