STATE OF NORTH CAROLINA, EX REL UTILITIES COMMISSION v. PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC.

(Filed 23 May 1962.)

1. **Utilities Commission § 6; Gas § 3—**

   The provision of G.S. 62-124 that the Utilities Commission, in addition to the factors stipulated, may consider all other facts that will enable it to determine what are reasonable and just rates, authorizes the Commission to consider only such other facts as have a bearing on value and rates which are established by evidence, found by the Commission, and set forth in the record, to the end that they may be properly reviewed by the courts.

2. **Same—**

   Original costs of capital improvements should not be ignored by the Utilities Commission in fixing rates of a public utility.

3. **Same—**

   Where the evidence of a public utility tends to support its right to change its depreciation rate, which results in the payment of a substantial amount in additional taxes, the amount of such additional taxes should be taken into consideration by the Utilities Commission in fixing rates.

4. **Same—**

   Where the evidence tends to support the right of a public utility to establish a pension fund for employees and make reasonable contributions thereto, the amount paid by the utility in such contributions should be considered by the Utilities Commission in fixing rates.

5. **Same—**

   Where the evidence of a public utility tends to support its contention that the banks from which it borrowed money required the maintenance

of a large balance, the minimum balance required by the banks should be considered as working capital by the Utilities Commission in fixing rates.

**6. Gas § 3;   Utilities Commission § 9—**

Where the findings of the Utilities Commission in determining the factors which it considered in fixing the rate base of a public utility are not supported by evidence, the cause must be remanded in order that the Commission may determine, in the manner prescribed by law, a rate schedule which is fair, reasonable, and nondiscriminatory. G.S. 62-124.

APPEAL by defendant from the order of *Hall, J.,* entered October 17, 1961, in Chambers, WAKE Superior Court.

Defendant Public Service Company of North Carolina, Inc., (hereafter called Public Service) originated this proceeding on October 28, 1959, by filing with the North Carolina Utilities Commission (hereafter called the Commission) a revised rate schedule requesting approval of a general increase of its charges for natural gas. According to its allegations, the new schedule was designed to absorb an increase in the price of gas which was put into effect by Transcontinental Gas Pipe Line Corporation (hereafter called Transco) which was defendant's only supply of natural gas.

In order to justify the proposed increase in rates, Public Service introduced evidence that Transco's new rate would increase its cost of gas $460,000 per year. Shortly before Transco's increase, the Commission had conducted a general rate hearing and fixed what it found to be fair and reasonable rates. Public Service introduced the Commission's findings and the 1958 rates based thereon, effective October 1, 1958. Additional evidence reflected changes in plant investment, revenue receipts, and operating expenses subsequent to the findings and the order fixing the 1958 rates. The evidence showed the following additional, or new, expenses: $84,000.00 increase in taxes resulting from changes in depreciation rate of its properties; $32,000.00 contribution to its employees' pension fund. The banks from which Public Service borrowed money required that a substantial balance be maintained on deposit in the account. This balance in the various banks throughout the appellant's territory approximated $230,000.00. The Commission failed to treat a substantial part of this required balance as working capital.

The Commission, by order dated November 3, 1959, suspended the proposed new rate schedule pending this inquiry. Public Service gave bond to make refund to customers of any excess charges found by the Commission to have been exacted on account of any reduction in Transco's rates then being inquired into by the Federal Power Com-

mission whose authority in that respect was exclusive because of the interstate character of Transco's business.

At the conclusion of the hearing the Commission, by order effective April 8, 1960, cancelled the new bonded rates, reinstated the old rates, and ordered Public Service to make refund. The Commission found:

"5. That, giving full consideration to the value of the Company's property used and useful in rendering service to the public under present conditions, the value of the service rendered, the amounts recently expended in permanent improvements, the original cost of the property, the book cost of the property, and the probable earning capacity of the property in its present condition, state, and location for the use being made of it for the public benefit, and the present and reasonably predictable future capital requirements of the Company, the fair value of its property is found to be $16,125,000.00. * * *

"When viewed in the light of increased earnings which the company may reasonably expect by reason of its additions, its increased customers, and its increased allocation of gas, Public Service is earning, and will continue to earn, a return which is not unreasonably low. * * *

"We have found the fair value in this case to be $16,125,000. In so finding we have considered all factors required by G.S. 62-124 and *all other facts* which we feel have bearing upon our conclusion — without reference to any specific formula." (emphasis added)

Commissioner Long concurred in the result but did so because of failure of Public Service to prove rate base. "I simply cannot find in the testimony a basis satisfactory to me for determining the original cost. I am, therefore, left with neither proof of replacement value and these two criteria for establishing 'value' are not available to me from the record. * * *

"The majority finds a definitive figure to represent the Company's rate base and its expenses during the test period, both before and after pro forma adjustments. It determines the dollar amount of earnings. I do not agree with these determinations. They may be correct. If they are, the evidence does not support them."

Commissioner Worthington, dissenting, said:

"The established fair value rate base of $16,125,000 is $325,-000 less than plant in service at the end of the test period (September 30, 1959). This is true even though the Company follows a custom of not adding to plant investment book balance its

major additions during a year until the month of December. It is evident that no real effort has been made to establish a reasonably just fair value rate base commensurate with investment and according to approved principles. Indeed, it is apparent in this particular instance that the majority determined from the start that the rates in effect at the time the increase was made effective, due to the increase in cost of gas from Transcontinental Gas Pipe Line Corporation, should be established as the rates to be approved in this proceeding and set about to fit the rate base and the rate of return to the revenue produced by these rates. This is a decided departure from rate making. * * *

"As evidence that the rate base used in this instance is an arbitrary figure, one designed to produce just such net revenue by the use of a 6 per cent rate of return thereon as the rates in effect prior to the increase will produce, is the fact that the Commission first established the rate base at $16,500,000 and then at $16,491,000, and when it was found that by the use of a 6 per cent rate of return the old rates would not produce the net revenue to justify the use of these figures the rate base was arbitrarily reduced to $16,125,000. This is a mere juggling of figures and represents no real approach to a determination of the fair value rate base."

To the findings and conclusions of law, Public Service made detailed objections. These objections related (1) to the Commission's fixing the rate base at $16,125,000 as the fair value of appellant's property for rate purposes; (2) concluding that the old rate would yield a net operating income of $967,570.00, which would provide a net income of six per cent on the value as fixed in the rate base. The objection to the findings of fact are upon the ground they lack evidentiary support. The Superior Court of Wake County, after hearing objections, considering exceptions, overruled them and entered an order affirming the Commission. Public Service appealed.

*Thomas Wade Bruton, Attorney General, Charles W. Barbee, Jr., Asst. Attorney General for the North Carolina Utilities Commission, plaintiff appellee.*

*Lake, Boyce & Lake by I. Beverly Lake for defendant appellant.*

HIGGINS, J. This proceeding involves many of the issues of fact and conclusions of law discussed by this Court in *Utilities Commission v. Piedmont Natural Gas Company,* decided on May 3, 1961, and reported in 254 N.C. 536, 119 S.E. 2d 469. We may say, however, the Com-

mission entered the order now involved on April 8, 1960, more than one year prior to our decision in *Piedmont*. The Commission did not have, but the Superior Court did have before it that decision.

In this proceeding, as in *Piedmont*, the intent to have Public Service absorb Transco's rate increase is threaded throughout the record. Both the rate base and the allowable deductions seem to have been reduced so that the net income would reflect a six per cent profit at the 1958 rate. Notwithstanding the progressive increase in plant investment, the rate base as of October 8, 1960, was less, by $325,000, than the Commission had found it to have been on September 30, 1959. The record confirms the juggling of figures, charged without equivocation in the dissent, and alluded to in the concurring opinion. These confirm the purpose of the majority to fix a rate base and a net operating profit which would show a six per cent return. In fixing the rate base at $16,125,000 the majority opinion says: "In so finding we have considered all factors required by G.S. 62-124 and *all other facts which we feel have a bearing upon our conclusion — without reference to specific formula.*" (emphasis added)

The statute gives the Commission the right to consider *all other facts* that will enable it to determine what are reasonable and just rates. The right to consider "all other facts" is not a grant to roam at large in an unfenced field. The Legislature properly understood that, at times, other facts may exist, bearing on value and rates, which the Commission should take into account in addition to those specifically detailed in G.S. 62-124. However, it was contemplated that such facts be established by evidence, be found by the Commission, and be set forth in the record to the end the utility might have them reviewed by the courts.

The rules fixing rates are set forth in G.S. 62-122, *et seq.* See especially 124. They are discussed more or less in detail in *State ex rel Utilities Commission v. State*, 239 N.C. 333, 80 S.E. 2d 133; *State v. Carolina Power & Light Co.*, 250 N.C. 421, 109 S.E. 2d 253; *Utilities Commission v. Piedmont Natural Gas Co., supra.* In fixing fair value, original cost is an item to be considered. The Commission's accountant testified: "Original cost would be the actual cost of the property . . . by either the predecessor company or present company . . . by original cost . . . I mean cost at the time it was installed without regard to who installed it. For illustration, if the Raleigh Gas Company installed a certain line of pipe, I mean the actual cost incurred at the time of laying the property. We are not talking about what Public Service may or may not have paid to Raleigh Gas Company."

Unquestionably we think the Commission should consider "original cost" as one of the items in determining fair value. How much or how

little original cost should figure in fixing present value is a matter of judgment, depending on many things. Certainly, original cost to Public Service should not be ignored as the Commission's expert witness suggested in fixing rates giving a fair return on its investment.

Evidence before the Commission tends to support the right of Public Service to change its depreciation rate and to charge as expenses the $84,000 additional taxes the change required. The evidence tends to support the right to establish a pension fund for employees and to make reasonable contributions thereto. Likewise, the evidence tends to support the treatment of the minimum balance required by creditor banks as working capital. Findings to the contrary are without support.

This proceeding differs in one respect from *Piedmont.* In the latter, the superior court reversed the Commission, and the Commission appealed. In this case the superior court affirmed the Commission, and Public Service appealed. In *Piedmont,* the presiding judge held the rate base was a quotient, fixed arbitrarily to require the gas company to absorb Transco's price increase, and that the rate base so fixed was not supported by competent, material and substantial evidence. After review, this Court agreed with the superior court and affirmed the judgment. In this case the Commission fixed the rate base in the same manner and for the same purposes as in Piedmont. On appeal to the superior court, the presiding judge held the evidence of the rate base was sufficient to support the Commission's finding. This appeal confronts us with the same question presented in *Piedmont*: Is there competent, material, and substantial evidence in the record to support the rate base fixed by the Commission? We are forced to conclude, as in *Piedmont,* the record does not disclose evidence sufficient to support the findings. The appellant is entitled to go before the Utilities Commission for further hearing.

The Commission will determine, in the manner provided by law, and put into effect a rate schedule which is fair, reasonable, and non-discriminatory. G.S. 62-124; *Utilities Commission v. Piedmont Natural Gas Co., supra; State v. Carolina Power & Light Co., supra; Utilities Commission v. Greensboro,* 244 N.C. 247, 93 S.E. 2d 151; *Utilities Commission v. State,* 243 N.C. 12, 89 S.E. 2d 727; *Utilities Commission v. Southern Bell Tel. & Tel. Co.,* 239 N.C. 333, 80 S.E. 2d 133.

The Superior Court of Wake County will remand the proceeding to the North Carolina Utilities Commission for further hearing in accordance with this opinion.

Reversed.