STATE OF NORTH CAROLINA, EX REL UTILITIES COMMISSION v. RYDER TANK LINE, INC., AND CENTRAL TRANSPORT, INC.

(Filed 1 May 1963.)

**1. Utilities Commission § 9—**

The Utilities Commission's resolutions of the questions of public need for a particular carrier service and the ability of the applicant to perform that service are conclusive if supported by competent, material, and substantial evidence.

**2. Carriers § 2—**

Evidence that having a truck terminal near to port warehouses would be conducive to the development and expansion of business by enabling

shipments to be dispatched promptly is properly considered by the Utilities Commission upon the question of public need for a new carrier with nearby terminals when all other carriers authorized to transport such goods in the same territory have terminals some distance from the warehouses.

3. Same—

Evidence *held* sufficient to support the conclusions of the Utilities Commission that there was a public need for the limited carrier service proposed, and the ability of the applicant to perform that service.

4. Utilities Commission § 9—

The question of public convenience and necessity is primarily for the determination of the Utilities Commission, and its order will not be disturbed on appeal except upon a showing of capricious, unreasonable, or arbitrary action, or disregard of law.

APPEAL by Ryder Tank Line, Inc., and Central Transport, Inc., from *MacRae, S.J.,* January 14, 1963 Civil Term, WAKE Superior Court.

On June 4, 1962, Bulk Haulers, Inc., a newly chartered corporation, filed with the North Carolina Utilities Commission a verified application for common carrier authority to transport commodities in bulk, liquid or dry, in tank or hopper vehicles, and cement in bulk, bag or containers, and return rejected shipments and empty containers . . . over irregular routes between all points and places within the State of North Carolina. Two carriers filed protests and were permitted by the Commission to intervene.

Ryder Tank Line, Inc., with terminal facilities at its headquarters in Greensboro, and at Charlotte and at Fayetteville, has operating authority with identical rights applied for by Bulk Haulers, Inc. Central Transport, Inc., with headquarters in High Point, likewise has operating authority covering the same commodities and the same territory. Both Ryder and Central protested on the ground the Haulers' application duplicated their services; that there was neither present nor probable future need for the service, and that granting the requested authority would jeopardize the protestants' solvency and render their operations less profitable.

After hearing, the Commission found:

"1. Applicant has sustained the burden of proof that a public demand and need exists for its service in the transportation of caustic soda and molten sulphur in tank trucks from Wilmington, North Carolina, and a radius of 25 miles thereof, to all points and places in North Carolina and return of rejected shipments over irregular routes in addition to existing authorized transportation service.

"2. Applicant failed to sustain the burden of proving that a public need exists for additional facilities and services in the transportation of commodities other than caustic soda and molten sulphur, and that present carriers are unable to and cannot meet these needs.

"3. Applicant is fit, willing and able to properly perform the proposed service."

The Commission concluded:

"The record in this proceeding fails to reveal that there is a public demand and need for an additional transportation facility or service to transport all liquid and dry commodities, in tank or hopper equipment, of which there are perhaps hundreds, but the evidence is sufficient to satisfy us that additional facilities and service are needed to transport caustic soda and molten sulphur, liquid, in tank vehicles, from Wilmington and a radius of 25 miles thereof to all points and places in North Carolina."

The Commission ordered that a certificate issue authorizing Bulk Haulers, Inc., to transport over irregular routes caustic soda and molten sulphur in tank vehicles from Wilmington, North Carolina, and points within a radius of 25 miles thereof to all points and places in North Carolina and return rejected shipments. Upon appeal, the Superior Court overruled all exceptions and affirmed the order of the Utilities Commission. The protestants appealed to the Supreme Court.

*Cannon, Wolfe & Coggin, by J. Archie Cannon, for Ryder Tank Line, Inc., appellant.*

*Martin and Whitley, by Robert M. Martin, for Central Transport, Inc., protestant appellant.*

*Bailey, Dixon & Wooten, by Ruffin Bailey, Hogue & Hill, by C. D. Hogue, Jr., for Bulk Haulers, Inc., appellee.*

HIGGINS, J. The technical objections to the form of Bulk Haulers' application and the Commission's order allowing it in part, are inconsequential. They are not sustained. We need, therefore, discuss only the questions whether the applicant has carried the burden of showing (1) a public need for the limited service, and (2) the ability to perform that service. The Commission's resolution of these questions is binding on the Court if supported by competent, material and substantial evidence "in view of the entire record." *Utilities Comm. v. Towing Corp.*, 251 N.C. 105, 110 S.E. 2d 886; G.S. 62-121.5, *et seq.* (Truck Act of 1947).

The applicant is a new corporation operating out of Wilmington, North Carolina, and organized for the purpose of carrying the described liquid and dry commodities in tank or hopper motor vehicles over irreguar routes between all points in North Carolina. The evidence disclosed that Diamond Alkali Company has just finished at Wilmington a storage facility for bulk caustic soda. The Texas Gulf Sulphur Company is in the process of finishing a storage facility for molten sulphur. The President of the Wilmington Chemical Terminal testified the terminal is a warehouse facility, receiving caustic soda and liquid sulphur from tanker ships and barges by water from points in Texas; that present facilities are sufficient to store 3,500 long tons of caustic soda and 8,000 tons of molten sulphur; that these products are basic in the manufacture of textiles, paper, and fertilizer, and other commodities, and that heretofore these manufacturers have been required to keep on hand as much as two months' supply. With the warehousing of these products at Wilmington, only a few days' supply is necessary, thereby saving thousands of dollars in inventories.

In particular, Mr. Packer, President of Wilmington Chemical Terminal, Inc., testified: "We are supporting the petition for two reasons: one, we find it necessary to have local haulers who have terminals nearby simply so that we can get the trucks at exactly the time we need them. It really does not work in having these 75 miles away, they have to be local so we can get them quickly; that is very necessary for us. Number two is this, we specifically are supporting it because presently at this time we are soliciting new accounts . . .; twice in the last two months I have had to tell people who are coming in here that there were no local terminals in there, that the trucking service in my opinion was inadequate. This in itself keeps us from getting new business."

Mr. Henly, Southern Traffic Manager for Burlington Industries, testified: "I am supporting the application. The reason for this is that we are large user of chemicals, at our various textile plants which we now secure from vendors in states other than North Carolina, we feel that the new facilities that are being established in the State of North Carolina that a carrier certificated in Wilmington, at the origin of the supply, would be to our advantage. It is my intention to use this carrier if the certificate is granted to Bulk Haulers."

The Vice President of the North Carolina National Bank of Wilmington testified: "I am satisfied that if the certificate of authority is granted, that the funds are available to Bulk Haulers, Inc., for the operation of the business."

The evidence of many witnesses (some of which is sketchily quoted) was sufficient to show a present need for available motor carrier service of the type granted to Bulk Haulers, Inc. The evidence amply shows that a carrier based in Wilmington is essential to the future development of that port's potential storage and distribution of caustic soda and molten sulphur. A need is now present. The present availability of the service is a need for its further expansion. This the Commission may properly consider.

The protesting carriers are authorized to carry many commodities. They are based many miles from the storage facilities at Wilmington. The transportation of caustic soda and molten sulphur, and the equipment to carry them, are only incidental to the protestants' other activities. Bulk Haulers, Inc., will carry only soda and sulphur. Its tanker trucks will be operating from Wilmington. A hurried call may be answered by having a loaded tanker on the road within minutes. The advantages are obvious. The evidence of convenience and need is substantial. "It is to be remembered that what constitutes 'public convenience and necessity' is primarily an administrative question with a number of imponderables . . ." *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 28 S.E. 2d 201. "(T)he courts will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law." *Utilities Commission v. Ray*, 236 N.C. 692, 73 S.E. 2d 870.

The evidence before the Utilities Commission was sufficient to sustain its findings. The judgment of the Superior Court overruling the exceptions and approving the Commission's order is

Affirmed.