STATE OF NORTH CAROLINA EX REL NORTH CAROLINA UTILITIES COMMISSION v. CAROLINA COACH COMPANY AND QUEEN CITY COACH COMPANY.

(Filed 4 March 1964.)

**1. Carriers § 2—**

In order to be entitled to a franchise authority the applicant has the burden of showing public convenience and necessity. G.S. 62-262.

**2. Same; Carriers § 6—**

The interchange of equipment by two carriers under lease agreement so as to afford passengers through service, instead of requiring them to change buses at interchange points along their respective routes, is authorized by statute and the rules of the Commission promulgated thereunder, G.S. 62-31, and does not involve any new or additional franchise requiring applicants to show public convenience and necessity, and such agreement, after the giving of proper notice and the filing of the agreement, is effective without the approval of the Commission, and may be suspended or disapproved by the Commission only when it finds upon supporting evidence that it is detrimental to the public interest.

**3. Utilities Commission § 9—**

An order of the Utilities Commission is *prima facie* just and reasonable, G.S. 62-26.10, and its findings are conclusive if supported by competent, material and substantial evidence; however, when its order is based on conclusions not supported by any competent, material and substantial evidence such order may not be upheld by the courts.

**4. Utilities Commission § 1—**

The Utilities Commission and not the court is authorized to regulate utilities.

**5. Same; Carriers § 2—**

Public policy does not condemn competition as such but only competition which is unfair or destructive. G.S. 62-121.44.

**6. Utilities Commission § 9—**

The rule that where an order of the Utilities Commission is not based on competent, material and substantial evidence the court must remand the cause to the Commission for further proceedings applies where the Commission has the duty to make a positive determination and does not apply when no action or order of the Commission is necessary.

**7. Same—**

Where a lease agreement of carriers to provide through service is disapproved by an order of the Utilities Commission which is not supported by any competent, material and substantial evidence, no remand to the Commission is necessary, but the order should be reversed by the Superior Court, the Commission being free at any time thereafter to institute another hearing to determine, upon proper evidence, whether the agreement is contrary to the public interest.

REVIEW on *certiorari,* issued on petition of the State of North Carolina, ex rel. North Carolina Utilities Commission, a judgment of *Copeland, S. J.,* September 22, 1963, "A" Civil Session of WAKE.

Proceeding before the North Carolina Utilities Commission (hereinafter referred to as Commission) relative to a Lease of Equipment Agreement between Carolina Coach Company (Carolina) and Queen City Coach Company (Queen).

The Lease, consisting of two instruments which together constitute the Agreement, is dated June 1962 and provides for through service without change of buses over the franchise routes of the respective agreeing parties, (1) between Charlotte and Winston-Salem via Salisbury, (2) between Charlotte and Winston-Salem via Lexington, (3) between Raleigh and Winston-Salem via Greensboro and High Point, and (4) between Fayetteville and Winston-Salem via Sanford, Greensboro and High Point. For example, if the agreement is put into effect, Carolina will operate buses over its franchise route from Charlotte to Salisbury and there deliver the buses to Queen's personnel who will operate them over Queen's franchise route to Winston-Salem and return them over the same route to Salisbury and there deliver them to Carolina's employees who will operate them over Carolina's franchise route back to Charlotte. Each party will be fully responsible for the operation and the cost thereof on its own franchise route, and the non-owner, lessee of the buses, will pay rental for the use thereof on its route at 18 cents per mile. The operations on the other routes will be conducted in the same manner and on the same basis. The agreement permits through travel over the franchise routes of Carolina and Queen between the points above stated without the necessity of changing buses at former interchange points—Salisbury, Lexington, Greensboro and High Point.

The agreement was filed with the Commission on 2 August 1962, and notices thereof were mailed to Greyhound Corporation (Greyhound) and Safety Transit Lines, the carriers which operate to, from or through the interchange points.

On 21 August 1962 Greyhound filed with the Commission a protest alleging that the agreement will create a new service never offered before, will permit Carolina and Queen to furnish through service between Charlotte and Winston-Salem and between Raleigh and Winston-Salem competitive with such service already provided by Greyhound, the service maintained by Greyhound is ample and frequent and more than adequate for both intrastate and interstate traffic, revenues from such service by Greyhound have been inadequate to defray proportionate costs, the proposed new service will cause Greyhound to compete at a loss, and the proposed service will require Greyhound to curtail its operations in detriment of the public interest.

At the hearing before the Commission Carolina and Queen introduced evidence, including a map showing franchise routes of the three carriers. The evidence explains the proposed operations, and tends to establish other facts, as follows: Carolina and Queen have previously filed with the Commission and put into effect many such agreements, affecting other routes. No schedules have been made out, but schedules will be filed if this agreement goes into effect. The agreement will permit through service between Winston-Salem and Durham (including Duke University), Chapel Hill (including the University of North Carolina) and Burlington, a service not now available. Likewise, it will supply heretofore unavailable through service between Winston-Salem and Concord, Kannapolis, Sanford and Siler City. The proposed through service between Winston-Salem and Fayetteville will not compete with Greyhound. The agreement will result in more efficient and economical service by Carolina and Queen on the routes in question, and will be a convenience to the public. The contracting parties have ample modern equipment to implement the service. The new service will create no operating problems. Greyhound has over 100,000 route miles in the country, and it doesn't need these agreements. Queen and Carolina together have less than 7,500; and the only way they can provide people in their areas with an improved through service and the only way they can compete with Greyhound is to lease each other's buses and put this type of service in operation. The number of passengers which would be involved in these operations is not known now. Presently a lot of the Durham, Chapel Hill and Burlington passengers, bound for Winston-Salem, are transferring to Greyhound at Greensboro rather than change buses at Greensboro and High Point on the Carolina and Queen routes. Even with the Lease Agreement the Carolina-Queen service will not be able to compete with Greyhound for traffic between Winston-Salem and Greensboro for the Greyhound route is shorter and faster. The Carolina-Queen operation between Raleigh and Winston-Salem will be a few miles shorter than Greyhound's. The only difference in service the agreement will make is that passengers will not have to change buses at interchange points. No new franchise authority is necessary to put the agreement into effect.

Greyhound offered no evidence.

The Commission by a three to two decision, Commissioners Wescott (Chairman) and Eller dissenting, entered an order disapproving the agreement. The findings and conclusions of the majority of the Commission are paraphrased, except where stated verbatim, as follows: "The real issues involved are (1) the competitive effect on competing carriers by the installation of what is termed an entirely new service, (2) the

over-all effect on the public interest." The evidence does not show what the service schedules will be, the extent of the proposed service, any public dissatisfaction with or complaints concerning present service, or any need for the proposed service. Through service has its advantages, but the present plan of operation has been in effect for many years and resulted from showings of "public convenience and necessity." The proposed service would give Carolina and Queen a competitive advantage and enable them to advertise through service. Combinations of this kind "could well be disastrously competitive to another carrier." The service planned under the agreement is in effect tantamount to a new franchise authority, and such authority is obtained only through a showing of public convenience and necessity. The new service "could well result in serious curtailment of services on the part of Greyhound and thereby result in decrease of needed services in its operating territory . . . and definitely be detrimental to the public interest." The agreement "is definitely not in the public interest and . . . provides a service and an operating authority that will be tantamount to a franchise . . ., will be unduly competitive and will tend to create an unsavory situation between carriers."

Upon appeal by Carolina and Queen to superior court, judgment was entered stating conclusions, which are discussed in the opinion proper, reversing the order of the Commission, and remanding the cause to the Commission "for such action as may be necessary and appropriate to allow the Lease of Equipment Agreement . . . to go into full force and effect."

Greyhound filed exceptions and gave notice of appeal, but abandoned the appeal. Thereupon, the Commission petitioned this Court for *certiorari*. The petition was allowed December 10, 1963.

*Edward B. Hipp for the Commission.*
*Allen, Steed & Pullen and Joyner & Howison for Respondents Carolina Coach Company and Queen City Coach Company.*

MOORE, J. The judge below concluded that the Commission erred (1) in holding that the proceeding before it was tantamount to a hearing upon an application for a franchise and that the proposed through service should not be allowed in the absence of a showing by Carolina and Queen of "public convenience and necessity" or the essential elements thereof, such as public demand and positive need for the service, and (2) in that the findings of the Commission that the proposed service is "unduly competitive" and "not in the public interest" are not supported by competent, material and substantial evidence.

The granting of franchise authority for the operation of buses over the highways of North Carolina, for the transportation of persons and property for compensation, must be predicated upon public convenience and necessity. The burden of proof is upon the applicant for franchise authority to show public convenience and necessity. G.S. 62-121.52 (recodified as G.S. 62-262 pursuant to the 1963 Public Utilities Act).

The rendering of the new service by Carolina and Queen under the Lease of Equipment Agreement does not involve any new or additional franchise. It is perfectly clear from all of the evidence, and appellant does not contend otherwise, that the contracting parties propose to maintain this service in connection with their already established franchises.

The Lease of Equipment Agreement and the proceeding before the Commission with respect thereto were respectively executed and instituted pursuant to Rule 14 of the rules and regulations of the Commission promulgated under authority of G.S. 62-121.45 (now G.S. 62-31), entitled "Interchange of Equipment," which is as follows:

"Common carriers may interchange equipment for the purpose of providing through service without change of passengers from one bus to another, but no such interchange agreement shall become effective unless the parties thereto shall file a true copy thereof with the Commission and give notice thereof to all common carriers operating to, from or through the interchange point at least twenty (20) days prior to the effective date of such agreement; provided, the Commission may upon its own motion, or upon protest, suspend or disapprove the agreement for reasons considered to be in the public interest."

The carriers have legal right to contract *inter se,* and the law encourages cooperation and agreements between them respecting their service to the public. G.S. 62-121.64(a); *Utilities Commission v. Coach Co.,* 260 N.C. 43, 132 S.E. 2d 249. And Rule 14 authorizes carriers to interchange equipment "for the purpose of providing through service without change of passengers from one bus to another"—the very purpose for which the Carolina-Queen agreement was made. Affirmative approval of the agreement by the Commission is not required by Rule 14. The only conditions precedent to putting the agreement into effect is that 20-days notice be given all carriers "operating to, from or through the interchange point," and that the agreement be filed with the Commission. There is no contention that Carolina and Queen failed to comply with these conditions. ". . . (T)he Commission may on its own motion, or upon protest, suspend or disapprove the agreement for *reasons* considered to be in the public interest." This places no burden on the

parties to the interchange agreement. The presumption is that through service is in the public interest. In the absence of "reasons," based on evidence in the record, that the agreement is detrimental to the public interest, the agreement may not be suspended or disapproved.

The Commission's order is erroneous in that it places the burden on Carolina and Queen to show an affirmative public demand and need for the through service. The order declares, in effect, that where through service, without change of buses, is proposed by interchange of equipment between carriers, it is tantamount to an application for new franchise authority if the proposed service is competitive with another carrier, and to be permitted to institute such service the interchanging carriers must show public convenience and necessity. Rule 14 is not susceptible of such construction.

The sole issue before the Commission was whether the public interest would be adversely affected by the proposed service. Transportation of passengers by motor carriers for compensation is a business affected with a public interest. G.S. 62-121.44. The Commission concluded that the proposed service could be "unduly competitive" and would tend "to create an unsavory situation between carriers." These findings if supported by competent, material and substantial evidence, are binding on appeal. *Utilities Commission v. Champion Papers, Inc.*, 259 N.C. 449, 130 S.E. 2d 890; *Utilities Commission v. Tank Line*, 259 N.C. 363, 130 S.E. 2d 663; *Utilities Commission v. R. R.*, 256 N.C. 359, 124 S.E. 2d 510. The Utilities Commission, and not the courts, is authorized to regulate utilities. *Utilities Commission v. Champion Papers, Inc., supra.*

There is no public policy condemning competition as such in the field of public utilities; the public policy only condemns unfair or destructive competition. G.S. 62-121.44. "The public is best served in many circumstances when destructive competition has been removed and the utility is a regulated monopoly. 'Whether there shall be competition in a given field and to what extent is largely a matter of policy committed to the sound judgment and discretion of the Commission. The Commission must maintain a reasonable balance to see that the public is adequately served and at the same time see that the public and the public utilities involved are not prejudiced by efforts which flow from excessive competition brought about by excessive services. 73 C.J.S., Public Utilities, § 42, p. 1099 . . .' " *Utilities Commission v. Coach Co., supra.* The judgment and discretion of the Commission in this regard must, however, be based on facts.

We do not find any evidence in the record tending to show that the services proposed by Carolina and Queen will result in unfair and destructive competition. Competition will be involved to be sure, and the

competitive position of Carolina and Queen will be improved in some respects. The operation between Fayetteville and Winston-Salem is not competitive with Greyhound. The other routes are competitive with Greyhound without the proposed service. The only change the interchange agreement makes is that passengers will not be required to change buses—the service will otherwise be the same. There is evidence that the proposed through service will be an advantage and convenience to the public in travel between Winston-Salem and other places between Winston-Salem and interchange points, on the one hand, and such places as Concord, Kannapolis, Sanford, Siler City, Chapel Hill, Durham and Burlington, on the other. The proposed service, point to point, between Charlotte and Winston-Salem cannot be said to give Carolina and Queen an unfair advantage of Greyhound, for the Greyhound route via Lexington will still be the fastest service between those points since Greyhound operates on three-fourths of the route with closed doors. The proposed Carolina-Queen operation between Raleigh and Winston-Salem will be about ten miles shorter than Greyhound's competing service. But the Carolina-Queen routes are through one of the heaviest populated areas of the State, including Durham, Chapel Hill, Burlington and High Point, which their buses must serve. On the other hand the Greyhound route, which is via Asheboro, is through a relatively sparsely populated area, conducive of fast schedules. In point to point service between Greensboro and Winston-Salem, the proposed service cannot compete with Greyhound which has the shorter and faster route—Greyhound does not serve High Point. Heretofore many passengers, destined for Winston-Salem and originating on Carolina's routes between Raleigh and Greensboro, have changed to Greyhound at Greensboro rather than change to Queen at Greensboro and back to Carolina at High Point— they also used Greyhound on return trip. The proposed service in this phase will be a decided convenience to the passengers and will be new competition for Greyhound for traffic originating with Carolina and Queen. However, there is nothing in the record to show that it will impair the quality of Greyhound's service or endanger Greyhound's financial position.

It is true, as contended by the Commission, that an order made by it is *prima facie* just and reasonable. G.S. 62-26.10; *Utilities Commission v. Coach Co., supra; Utilities Commission v. R. R., supra.* But this does not preclude a carrier from showing on appeal that the order is not supported by competent, material and substantial evidence. *Utilities Commission v. R. R.,* 238 N.C. 701, 78 S.E. 2d 780.

In its brief the Commission seeks to bridge the gap caused by lack of supporting evidence by saying: "The results were amply within the

Commission's expert knowledge as the agency established to regulate bus transportation." The superior capabilities of the members of the Commission and their expertness in dealing with utilities problems are fully recognized by us. But the Commission's knowledge, however expert, cannot be considered by us on appeal unless the facts embraced within that knowledge are in the record. Questions on appeal from the Commission must be determined upon the record certified by it. *Utilities Commission v. Mead,* 238 N.C. 451, 78 S.E. 2d 290.

It is further argued that the courts do not ordinarily review or reverse the exercise of discretionary power by an administrative agency such as the Utilities Commission except on showing of capricious, unreasonable or arbitrary action or disregard of law. *In re Department of Archives and History,* 246 N.C. 392, 98 S.E. 2d 487; *Utilities Commission v. Ray,* 236 N.C. 692, 73 S.E. 2d 870. To this we add that the weighing of the evidence and the exercise of judgment thereon within the scope of its authority are matters for the Commission. *Utilities Commission v. Motor Express,* 232 N.C. 180, 59 S.E. 2d 582. Even so, the Commission has no discretionary power, where its function is to weigh the evidence and make judgment thereon, if there is no evidence to weigh.

It appears likely that the Commission was motivated to seek review in this proceeding because of the judge's order remanding the cause to the Commission "for such action as may be necessary and appropriate to allow the lease of equipment agreement . . . to go into full force and effect." Apparently the Commission felt that the court was usurping a function which lies solely within the authority of the Commission. The Commission is jealous, and rightly so, of the authority and jurisdiction vested solely in it by the Legislature. Every court and judicial body should jealously guard and firmly maintain its particular authority and jurisdiction. We understand, but do not entirely agree with, the Commission's interpretation of the judgment. The court below correctly reversed the order of the Commission. This reversal leaves Carolina and Queen free to put the agreement into effect, since there was no lawful disapproval thereof. It requires no affirmative approval. Whether the Commission will now or sometime in the future, based on operating experience, institute another hearing with respect to the agreement is a matter for its decision.

Finally, it is suggested that, where an order of the Commission is based on erroneous interpretation of law, the cause should be remanded to the Commission for further hearing and not be terminated by the court. This is true where the Commission has the duty to make a positive determination, such as the fixing of rates, and because of some error of law the determination is in suspense and the utility is entitled to have the

determination made. *Utilities Commission v. Public Service Co.*, 257 N.C. 233, 125 S.E. 2d 457; *Utilities Commission v. Gas Co.*, 254 N.C. 734, 120 S.E. 2d 77; *Utilities Commission v. Coach Co.*, 254 N.C. 668, 119 S.E. 2d 621; *Utilities Commission v. Motor Carriers Asso.*, 253 N.C. 432, 117 S.E. 2d 271; *Utilities Commission v. Telegraph Co.*, 239 N.C. 333, 80 S.E. 2d 133. This is not the case here.

This cause is remanded to superior court for judgment in accordance with this opinion, i.e., reversing the order of the Commission and omitting any requirement of affirmative action on the part of the Commission.

Modified and affirmed.