STATE EX REL. UTILITIES COMM. v. PUBLIC STAFF

[123 N.C. App. 623 (1996)]

———

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION; AND CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA, APPLICANT, APPELLEES v. PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION, INTERVENOR, APPELLANT

No. COA95-609

(Filed 20 August 1996)

## Utilities §§ 11, 51 (NCI4th)— pronouncement of policy in adjudicative proceeding—discretionary matter—specific policy—no abuse of discretion

The Utilities Commission did not exceed its statutory authority by the pronouncement of a policy in an adjudicative proceeding, since the Commission is specifically authorized by statute, N.C.G.S. § 62-23, to exercise in its discretion rulemaking functions within the course of its "functions judicial in nature"; furthermore, the Commission did not abuse its discretion in declaring, in the course of adjudicating a particular case, as policy that 100% of the gain or loss on the sale of water/sewer utility systems should be assigned to the utility company shareholders.

**Am Jur 2d, Public Utilities §§ 230, 232.**

Appeal by intervenor-appellant from orders entered 3 February 1995, 14 March 1995, and 12 April 1995 by the North Carolina Utilities Commission. Heard in the Court of Appeals 27 February 1996.

*Hunton & Williams, by Edward S. Finley, Jr., and James L. Hunt, for applicant-appellee Carolina Water Service, Inc. of North Carolina.*

*Public Staff, Antoinette R. Wike, Chief Counsel, and Paul L. Lassiter, Staff Attorney, for intervenor-appellant Public Staff— North Carolina Utilities Commission.*

JOHN, Judge.

Carolina Water Service, Inc. of North Carolina (CWS) filed an application with the North Carolina Utilities Commission (the Commission) 29 December 1994 requesting permission to relinquish its certificate to serve Mallard Crossing subdivision in Mecklenburg County and to sell that water and sewer system to the City of Charlotte. CWS further requested that its shareholders retain 100 percent of the capital gain on such sale, consistent with the policy articulated by the Commission in Docket No. W-354, Subs 133 and 134 (the policy), that

> in future proceedings, the Commission will follow a policy, absent overwhelming and compelling evidence to the contrary, of assigning 100 % of the gain or loss on the sale of water and/or sewer utility systems to utility company shareholders. . . . Such policy serves the public interest by promoting efficiencies through economies of scale and generally results in more favorable rates and an enhanced quality of service.

On 23 January 1995, Public Staff recommended to the Commission that it approve the transfer, but requested deferral of a ruling on distribution of the gain on sale until this Court resolved Public Staff's pending challenge to the Commission's ruling in Docket No. W-354, Subs 133 and 134. By order dated 3 February 1995, the Commission authorized transfer of the system, denied Public Staff's request to defer ruling, and awarded 100 percent of the gain on sale to the shareholders of CWS. The Commission concluded:

> [t]he Public Staff alleges no "overwhelming and compelling evidence" in this proceeding to convince the Commission to depart and deviate from the policy announced in the Order entered in Docket No[]. W-354, Subs 133 and 134 on September 7, 1994, to henceforth assign 100 percent of the gain or loss on the sale of water and/or sewer systems to utility shareholders.

The order further required CWS to file a report within 20 days showing calculation of the gain and related bookkeeping entries.

On 13 February 1995, CWS moved for additional time to file its report. Public Staff filed a response 17 February 1995 again requesting that the Commission

> issue an Order deferring its determination of the regulatory treatment to be afforded to the gain on CWS's sale of its Mallard

STATE ex rel. UTILITIES COMM. v. PUBLIC STAFF

[123 N.C. App. 623 (1996)]

Crossing system until after the North Carolina Court of Appeals rules on the Public Staff's appeal in Docket No[]. 354, Subs 133 and 134.

By order dated 14 March 1995, the Commission granted CWS's request for additional time, but once more denied Public Staff's request for deferral.

On 15 March 1995, Public Staff moved for an evidentiary hearing. The Commission denied the motion 12 April 1995, concluding Public Staff had failed to make a timely request for hearing when the matter was initially presented to the Commission, and thus had "waived its right to request such a hearing."

In *State ex rel. Utilities Commission v. Public Staff*, 123 N.C. App. 43, 46, 472 S.E.2d 193, 196 (1996) (No. COA95-27, filed 2 July 1996), this Court rejected arguments by Public Staff that the policy set out in Docket No. 354, Subs 133 and 134 was arbitrary and capricious, and unsupported by competent, substantial, and material evidence. However, Public Staff's challenge to future applicability of the policy was determined to be "prospective in nature" and thus not properly before the Court as it "had no bearing upon this case" and was "not ripe for determination." *Id.* at 51, 472 S.E.2d at 199.

From the Commission's orders dated 3 February 1995, 14 March 1995, and 12 April 1995, Public Staff appeals.

---

Public Staff attacks the Commission's reliance in the instant case upon the policy, contending that through its enactment, the Commission exceeded its statutory authority by unlawfully engaging in legislative rulemaking through *ad hoc* adjudication. We disagree.

By enactment of Chapter 62, our General Assembly has conferred upon the Commission

broad powers to regulate public utilities and to compel their operation in accordance with the policy of the State, as declared in G.S. 62-2.

*State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 32, 338 S.E.2d 888, 897 (1986) (citation omitted). *See also State ex rel. Utilities Comm. v. Southern Bell*, 307 N.C. 541, 545, 299 S.E.2d 763, 765 (1983) (pursuant to N.C. Gen. Stat. §62-30, "legislature has granted the Commission 'such general power and authority to supervise and control public utilities of the State as may be neces-

sary. . . .' "). In Chapter 62, the Commission is declared to be an "administrative board or agency" and is empowered to employ "rulemaking functions" as well as "functions judicial in nature" in the exercise of its legislatively designated responsibilities. N.C. Gen. Stat. § 62-23 (1989); *see also* N.C. Gen. Stat. § 62-31 (1989) ("Power to make and enforce rules") and N.C. Gen. Stat. § 62-60 (1989) (Power to "act[] in a judicial capacity"). These functions have been distinguished as follows:

> [A]djudication involves a specifically named party and a determination of particularized legal issues and facts with respect to that party. Rulemaking, by contrast, involves general categories or classes of parties and facts and policies of general applicability.

Daye, *North Carolina's New Administrative Procedure Act: An Interpretative Analysis*, 53 N.C.L. Rev. 833, 868 (1975).

As an administrative agency, the Commission may establish rules through *ad hoc* rulemaking in an adjudicative proceeding as well as through general rulemaking proceedings. *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 413, 269 S.E.2d 547, 569 (1980).

Accordingly,

> [t]he scope of [judicial] review of an administrative order wherein a new principle is announced and applied is no different from that which pertains to ordinary administrative action. The wisdom of the principle adopted is none of our concern [citations omitted]. Our duty is at an end when it becomes evident that the Commission's action is based upon substantial evidence and is consistent with the authority granted by [the legislature].

*Id.* (citing *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 207, 91 L. Ed. 1995, 2004-05 (1947)). *See also Public Staff* (COA95-27), 123 N.C. App. at ——, 472 S.E.2d at 196 (role of this Court "is not and should not be . . . to determine the merits of policy positions adopted or rejected by the Commission").

Having previously held in *Public Staff*, 123 N.C. App. at ——, 472 S.E.2d at 196, that the policy was not "arbitrary and capricious" and that it was supported by "substantial evidence," *see Rate Bureau*, 300 N.C. at 413, 269 S.E.2d at 569, we now consider Public Staff's argument herein that pronouncement of the policy in an adjudicative proceeding was not "consistent with the authority granted [the Commission] by [the General Assembly]." *Id.*

G.S. § 62-23 provides, *inter alia*, that

[t]he Commission shall separate its . . . rule making functions, and its functions judicial in nature to such extent as it deems practical and advisable in the public interest.

G.S. § 62-23.

Hence the Commission is specifically authorized by statute to exercise *in its discretion* rule making functions within the course of its "functions judicial in nature." *Id. See also Rate Bureau*, 300 N.C. at 413, 269 S.E.2d at 569 (citation omitted) ("choice . . . between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency"). The Commission thus acted in accordance with the discretionary authority accorded it by the General Assembly in the adjudication of Docket No. W-354, Subs 133 and 134 when it declared the policy would have prospective application to future proceedings. Public Staff's argument that the Commission thereby exceeded its statutory authority is unfounded.

The sole question remaining is whether enactment of the policy by the Commission within an adjudicative proceeding constituted an abuse of discretion. Exercise of discretionary powers of the Commission will not be reversed by reviewing courts except upon a showing of "capricious, unreasonable, or arbitrary action or disregard of law." *Utilities Commission v. Coach Co.*, 261 N.C. 384, 391, 134 S.E.2d 689, 695 (1964) (citation omitted). The arguments advanced by Public Staff in this regard are essentially identical to those found unpersuasive by this Court in *Public Staff* when considering whether the policy was arbitrary and capricious. As in *Public Staff*, we similarly conclude that declaration by the Commission of the policy in the course of adjudicating Docket No. W-354, Subs 133 and 134 was not an abuse of the Commission's legislatively accorded discretion.

Public Staff also maintains the Commission unlawfully exceeded its statutory authority by "[d]enying all of the Public Staff's requests for a trial-type hearing." This argument cannot be sustained.

Public Staff does not dispute that it failed, at the initial hearing or even prior to the Commission's final disposition of the matter, either to request a "trial-type hearing" or to allege *any* evidence, much less "overwhelming and compelling evidence," in an effort to challenge the Commission's reliance upon the policy as announced in Docket

No. W-354, Subs 133 and 134. Public Staff instead elected to respond to CWS's request for 100 percent of the gain on sale herein by asserting a single recommendation—deferral of decision pending issuance of this Court's opinion regarding the policy. Not until 15 March 1995 did Public Staff ultimately move for an evidentiary hearing, this request coming seven weeks after it brought the instant matter before the Commission and six weeks following the Commission's 3 February 1995 dispositional order.

As Public Staff's request for a "trial-type hearing" of substantive arguments was not before the Commission prior to its 3 February 1995 order applying the policy established in Docket No. W-354, Subs 133 and 134, the Commission was under no duty to rule upon the necessity of, nor grant, a hearing prior to applying that policy. *See State ex rel. Utilities Comm. v. Nantahala Power & Light Co.*, 313 N.C. 614, 745, 332 S.E.2d 397, 474, (1985) *rev'd on other grounds*, 476 U.S. 953, 90 L. Ed. 2d 943 (1986) (N.C.G.S. § 62-79 requires Commission to "consider and determine [only] *controverted* questions" (emphasis added)). Consequently, we hold the Commission correctly concluded Public Staff had "waived its right to request such a hearing," and reject Public Staff's remaining arguments which essentially rest upon the Commission's refusal to conduct an evidentiary hearing. *See Nantz v. Employment Security Comm.*, 28 N.C. App. 626, 630, 222 S.E.2d 474, 477 (1976) ("[a] litigant may not remain mute in an administrative hearing, await the outcome of the agency decision, and, if it is unfavorable, then attack it on the ground of asserted procedural defects not called to the agency's attention. . . ."). The Commission therefore properly applied the policy in the case *sub judice* when it stated:

> The Public Staff alleges no "overwhelming and compelling evidence" in this proceeding to convince the Commission to depart and deviate from the policy announced in the Order entered in Docket No[]. W-354, Subs 133 and 134 on September 7, 1994, to henceforth assign 100 percent of the gain or loss on the sale of water and/or sewer systems to utility shareholders.

Affirmed.

Judges EAGLES and WALKER concur.